## King v. Commonwealth.

(Decided June 1, 1928.)

### Appeal from Campbell Circuit Court.

1. Homicide.—Evidence, in prosecution for murder, held sufficient to sustain conviction.

2. Criminal Law.—Refusal of court, in prosecution for murder, to reopen case during argument to jury by attorney of commonwealth to permit introduction in evidence of clothing worn by deceased, held not error, where only purpose for introduction was to prove proximity of defendant and deceased at time shots were fired, and all of witnesses testifying agreed that shot was fired as claimed, and introduction of clothing would only afford cumulative evidence thereon.

3. Homicide.—In prosecution for murder, refusal of instruction relative to defendant's right to arm himself held not error, where, according to defendant's own testimony, he left scene of trouble, armed himself with a pistol, and returned.

4. Homicide.—Giving customary instruction on self-defense, in prosecution for murder, held not error, though defense was based solely on theory that shot was accidental, and no plea of self-defense was made, since, though giving of instruction was improper from standpoint of commonwealth, it was favorable to defendant, and afforded jury an additional ground on which it might acquit him.

5. Homicide.—Instruction, in prosecution for murder, relative to reasonable doubt as to degree of offense, and authorizing conviction for voluntary manslaughter or involuntary manslaughter as lesser degrees of offense charged, held proper, though not in pre-

cise form approved, since substantially informing jury that, if they believed defendant guilty, but entertained a reasonable doubt as to degree of offense, they should find him guilty of lower degree.

6. Homicide.—Any error in instruction defining involuntary manslaughter held not prejudicial, where defendant was convicted of murder under instruction concededly proper.

7. Homicide.—Where evidence in prosecution for muder is conflicting, jury's verdict cannot be set aside, unless it is palpably against the evidence.

HOWARD M. BENTON, ARTHUR J. DALY and CHARLES E. LESTER for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL KIRBY, JR., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Appellant was tried and convicted under an indictment charging him with murder and his punishment fixed at life imprisonment. The homicide occurred in a bawdy house in the city of Newport about 4 o'clock on the morning of February 3, 1927; those present at the time besides the appellant and the deceased, Harry Stevens, being Cleo Ward, who was in charge of the house, Thomas Schulte, James Lawrence, Henry Zakum, and Clarence Boeckley. The Ward woman and Boeckley were not present at the trial, both having left the state. Appellant arrived at the house some time after midnight and shortly after his arrival an altercation arose between Stevens and Lawrence. King and Schulte were sober, but all of the others present were more or less under the influence of liquor and from time to time various ones would purchase liquor for the crowd. Lawrence offered to purchase a bottle of liquor and took a quantity of paper money from his pocket. Stevens snatched the money from his hand and Lawrence, believing that Stevens had done so in jest, did not protest at once, but later demanded its return, and an argument between him and Stevens followed, resulting in a fight. They were parted, but the argument was renewed from time to time and Lawrence, according to the witness Schulte, finally remarked, "Wait until I go get my gun;" and King said, "I will go and get it," and ran out of the house. He returned in a few minutes and remained standing in the doorway. From this point the testimony is conflicting. Schulte testified that Stevens said, "I don't mean nobody

any harm, but who has the gun?'' What followed is thus related by Schulte:

"At that King was standing in the doorway and had his hand in his pocket, and the Ward woman grabbed his hand, pocket, gun, and all, and, as she did, Stevens grabbed at him and Lawrence grabbed at him, and his gun came out of the pocket, and they were in a tussle there, and two shots were fired, and I heard Stevens say, 'I am shot.' I raised my hand from King's shoulder, and I said, 'Don't shoot any more, Grover;' and he said, 'Make them let me go;' and I said, 'I cannot make them let you go;' and they let go of the gun, and Grover King ran out, and Stevens fell over the bed, and said, 'I am shot;' and I went in and pulled up his shirt, and he was shot in the abdomen. It all happened in the space of a moment."

Lawrence testified that at the time the shots were fired he and the deceased were facing each other and engaged in a scuffle, and that Cleo Ward was attempting to separate them, and the gun was fired from behind him and without any warning, and that neither he, the deceased, nor Cleo Ward at the time had hold of King. Henry Zakum testified that during one of the arguments between Stevens and Lawrence that Lawrence remarked, "I wish I had my gun," and told King to get it. King left and soon returned and the witness and Cleo Ward tried to get the deceased out of the house. As they started out the door Stevens said, "I can spit on the fellow that has the gun," and pointed in the direction of appellant. Appellant immediately drew his gun from his pocket and fired twice and the witness and Cleo Ward then grabbed appellant's hand. A police officer testified that appellant, after his arrest, stated that he heard Stevens say to Lawrence, "He would get the fellow who was with him," and appellant, thinking Stevens meant him immediately left and went to a neighboring house and borrowed a pistol from Tom Broadwell. Broadwell identified the pistol as his, but denied any knowledge of how appellant came into possession of it. Appellant denied making the statement attributed to him by the police officer, but claimed that he obtained the pistol from Broadwell's room before he went to the Ward house, and, not wishing to have it on his person, concealed it in the hallway when he entered the house, and, when Stevens

made a threat which appellant construed as being directed at him, he walked into the hallway and placed the pistol in his pocket. When he returned to the room Cleo Ward, Stevens, and Lawrence grabbed him, and, during the schuffle over the possession of the pistol, it was accidentally discharged while he was in a crouched position.

As grounds for reversal it is urged that the court erred in refusing to reopen the case during the argument to the jury by the attorney for the commonwealth to permit the introduction in evidence of the clothing worn by deceased; that the court, erred in giving and refusing instructions; and that the verdict it not sustained by the evidence.

The attorney for the commonwealth in the course of his argument adverted to the failure of the defendant to introduce in evidence the clothing worn by the deceased at the time he was shot, it appearing that it was in possession of the clerk. Counsel for defendant objected and insisted that the clothing had been introduced in evidence; but an examination of the stenographer's notes disclosed that the clothing had not been introduced, and defendant then moved to reopen the case to permit its introduction. The court properly overruled the motion. The only thing sought to be proved by the clothing was the proximity of appellant and deceased at the time the shots were fired; it being claimed that the clothing worn by deceased was powder burned and would show the muzzle of the gun was close to deceased when the shot was fired. All of the witnesses present testified that appellant was within two feet of the deceased when the shot was fired and the surgeon who operated on deceased testified there were powder burns on his body. The clothing would have only afforded cumulative evidence on the question of proximity and the appellant could not have been prejudiced by the court's refusal to permit its introduction.

Defendant offered the following instruction, which the court refused to give:

"The jury are further instructed that the defendant had the right to arm himself, if he did so, for the purpose of defending himself, and the jury will not regard his act of arming himself as being unlawful, unless you believe from the evidence that he so armed himself for the purpose of attacking the deceased."

This instruction was properly refused. If proper under any conceivable circumstances it was not proper here. According to appellant's own testimony, he left the scene of the trouble, armed himself with a pistol, and returned.

The appellant also offered an instruction on accidental shooting, but the court gave an instruction presenting this theory of his defense which was couched in broader language than the one offered by him. The court gave the customary instruction on self-defense and appellant complains that this was error, since he based his defense solely on the theory that the shooting was accidental and no plea of self-defense was made. This instruction, though improper under the circumstances from the standpoint of the commonwealth, was favorable to appellant, and afforded the jury an additional ground upon which it might acquit him, and he cannot complain.

In instruction No. 7 the jury were told that, although they believed from all the evidence beyond a reasonable doubt that defendant was guilty, yet if they entertained a reasonable doubt as to whether he had been proven guilty of murder, as defined in instruction No. 1, or voluntary manslaughter as defined in instruction No. 2, they should find him guilty of voluntary manslaughter. In the same instruction they were told to find him guilty of involuntary manslaughter, a lesser degree of the offense charged, if they did not believe he had been proven guilty of murder or voluntary manslaughter as defined in instructions 1 and 2, but did believe he had been proven guilty of involuntary manslaughter, as defined in instruction No. 3. This instruction upon the reasonable doubt as to the degree of the offense which the defendant had committed is not in the precise form approved by this court in Speaks v. Commonwealth, 149 Ky. 393, 149 S. W. 850, and numerous other cases, but it substantially informed the jury that, if they believed the defendant guilty, but entertained a reasonable doubt as to the degree of the offense, they should find him guilty of the lower degree.

Instruction No. 3, defining involuntary manslaughter is criticized, but the instruction is not susceptible of the interpretation placed thereon by counsel for appellant; but, even if it were, it was not prejudicial, since he was convicted of murder under an instruction concededly proper.

The contention that the verdict is not sustained by the evidence is best answered by a reference to the statement of facts. There is abundant evidence that the killing was intentional and without provocation. The evidence was conflicting and the case was peculiarly one for the jury, whose province it is to determine the credibility of the witnesses. Where the evidence is conflicting, the jury's verdict cannot be set aside, unless it is palpably against the evidence. Such is not the case here. Deaton v. Commonwealth, 211 Ky. 651, 277 S. W. 1001.

As the record discloses no error prejudicial to appellant's substantial rights, the judgment is affirmed.