**Henry Spencer McGEE, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 12, 1965.

Rehearing Denied and Dissenting Opinion Filed Nov. 5, 1965.

Frank E. Haddad, Jr., Louisville, William E. Scent, Reed & Scent, Paducah, for appellant.

Robert Matthews, Atty. Gen., Martin Glazer, Ass't. Atty. Gen., Frankfort, for appellee.

STEWART, Judge.

Henry Spencer McGee was convicted of the wilful murder of LeRoy Duncan and sentenced to life imprisonment. He appeals.

First, he argues the trial court committed prejudicial error by refusing to allow the introduction of a tape interview or a transcript of such recording for the purpose of impeaching the testimony of a Commonwealth witness.

The witness, George Henderson, made the tape recording in the office of appellant's counsel on October 22, 1962, which was one day after the murder and one day before Henderson gave a statement to the police. Henderson admitted on the stand that he made the tape recording. Mr. Frank Haddad, Jr., appellant's attorney, recorded the conversation, operating the recorder and asking the questions. Because it is asserted Henderson at the trial related a story different in certain respects from what he had told on the tape recording, Mr. Haddad proposed to introduce the recording in order to contradict Henderson and impeach his testimony. The trial court refused to permit a playback of the recording in the presence of the jury or a transcript thereof to be read to them, but ruled that Mr. Haddad could testify from his memory concerning the relevant portions of the interview.

In the recent case of Commonwealth v. Brinkley, Ky., 362 S.W.2d 494, which was a prosecution for obtaining money under false pretenses, it was held that a recording of a conversation between the prosecuting witness and the defendant, which recording was made by the sheriff who, with the permission of the prosecuting witness, hid himself in the trunk of a car and obtained it, was admissible in evidence, providing a proper foundation was laid.

In that case it was stated such a foundation could be established by a showing that the speaker was properly identified, that the mechanical device was capable of taking testimony, that the operator of the device was competent, that the recording was authentic and correct and preserved in a proper manner, that no changes or deletions had been made, and that the testimony was elicited freely. The Brinkley opinion does not state the reason for which the recording was sought to be introduced, that is, whether for corroboration, impeachment, or some other purpose.

In the present case, appellant's attorney stated he could prove the various factors necessary for laying a proper foundation. The trial court refused to hear any argument, pro or con, bearing upon the admissibility of statements recorded by tape, apparently believing that the recording would be inadmissible under any circumstances. The tape interview identified the witness by name, but not the interviewer; also, the interview itself did not reveal that the statements were given without any inducement.

Appellant argues that the tape recording of Henderson's interview is the only "evidence" of an eyewitness which "corroborates" his testimony that Duncan was the aggressor. Certainly the statements that were offered, assuming they were admissible, could not have been introduced as substantive evidence.

The tape recording of Henderson's interview was relevant only because it appeared to be a different version of what the witness, Henderson, said at the trial. Only a few of the statements had any bear-

ing upon the issue of fact raised and, from the record before us, it is impossible to understand how those items could have been played back in accordance with proper safeguards; that is to say, in playing back the recording, it is difficult to perceive how the trial court could have separated the admissible from the inadmissible in order to give an adequate admonition in respect to what was considered admissible.

In United States v. McKeever et al., 271 F.2d 669 (C.A., 2d Ct.), although the authenticity of a tape recording was established to the satisfaction of the trial judge in the United States district court, the trial judge declined to permit defense counsel to play the tape before the jury for the purpose of impeaching a witness, but he allowed defense counsel to read to the jury from a stenographic transcript of the recording many statements of the witness that conflicted with his testimony on direct examination.

On an appeal to the United States circuit court this practice was condemned, the opinion in the above-styled case stating on page 675: "Documents shown to a witness for the purpose of reviving his recollection may not be read or shown to the jury, since the documents themselves are not evidence and have no independent evidentiary value. Portman v. American Home Products Corp., 2 Cir., 1953, 201 F.2d 847, 850; Wigmore, Evidence § 763 (3d Ed. 1940). That such material is sought to be introduced on cross rather than direct examination is not a difference of significance."

Later, this statement appears in the same opinion on page 676: "To have permitted the playing of the recording involved in this case would in effect have allowed a witness to give testimony without being sworn and without opportunity for his cross-examination."

■ Admitting, arguendo, the trial court erred in not permitting the introduction of the tape interview, a comparison of Henderson's testimony under oath at the trial with his statements purportedly given on tape, discloses only a few variations. At the trial he admitted that during the tape interview he stated to appellant's counsel that Duncan had approached appellant at his car. His only denials at the trial were that many words and curses were exchanged between Duncan and appellant when they were in the house, where they first met, and that later when Duncan was killed out on the street, he had his hands *by his side* instead of *in his pockets*. We believe these claimed discrepancies were fully placed before the jury when defense counsel, by reference to the stepongraphic transcript of the recording, asked Henderson questions concerning these matters.

Furthermore, the trial court ruled that defense counsel could take the stand and testify under oath as to how Henderson's conversation with him differed from any testimony Henderson gave at the trial. This he declined to do, basing his refusal to do so upon the averment that his testimony would not be the "best evidence." It is our view the tape cannot be considered as evidence in any sense of the word.

We find no error in the trial court's ruling on the first issue raised.

The next error assigned is in connection with the giving of "Instruction No. 4," which reads:

"If you find the defendant guilty but on all the evidence have a reasonable doubt of whether he has been proved guilty of wilful murder or of voluntary manslaughter, you will find him guilty of the lower offense of *voluntary manslaughter or involuntary manslaughter.*" (Emphasis added.)

The trial court submitted proper instructions on wilful murder, voluntary manslaughter, and involuntary manslaughter. Appellant argues, however, that the trial court should have explicitly instructed the

jury to convict of the lesser offense (which he claims is involuntary manslaughter), if they had a reasonable doubt of the degree of the offense committed by appellant. He also maintains the instruction as given was confusing because of its use of the expression "voluntary or involuntary manslaughter," and this joining of the two offenses in this manner authorized the jury to convict for a crime which would not be the lesser one.

As early as 1878 in Lee v. Commonwealth, 10 Ky.Opin. 489, it was held that an erroneous instruction as to involuntary manslaughter is harmless, where a correct instruction as to voluntary manslaughter is given, and the jury found the defendant guilty of murder. Later in King v. Commonwealth, 224 Ky. 822, 7 S.W.2d 228, an error in an instruction defining involuntary manslaughter was held not prejudicial where the defendant was convicted of murder.

The instructions, taken as a whole, made it unmistakably clear that voluntary manslaughter is an offense of a lower degree than murder; and involuntary manslaughter is an offense of a lower degree than voluntary manslaughter. The jury convicted appellant of murder. Thus it is obvious they had no doubt as to the character of offense they believed he had committed.

The final contention is that prejudicial error was committed by the trial court in permitting the Commonwealth's attorney to make so-called improper statements in his closing argument to the jury.

Appellant raises the point that the Commonwealth's attorney misquoted the evidence as to whether anyone witnessed the victim threaten appellant on an occasion previous to the date of the killing. He asserts the Commonwealth's attorney stated no one except a waitress had been present when in fact the witness, Henderson, had been present. However, the testimony in controversy was read back to the jury to clarify this issue, and we conclude the error thus complained of was cured.

He also takes the position that it was highly objectionable for the Commonwealth's attorney to say that he (McGee) "came in here with a cock and bull story that it was an accident and expected this jury to let him off." The Commonwealth's view is that such a remark was permissible, as it was simply a strong answer to the defense's theory of the case, namely, that the victim had been inadvertently shot. The evidence certainly warranted this statement.

Appellant also takes exception to this statement: "* * * I think we have a right to ask you jurors to say to Henry Spencer McGee and to anybody else in this community who might think that he can kill wilfully and maliciously and not be punished severely by a jury, that we jurors of Jefferson County, Kentucky, are just not going to stand for it and when the proper case comes before us we are going to see that the law is enforced and enforced to the highest degree."

Appellant claims such argument indicated the jury would be ridiculed or criticized in the community where the crime was committed unless they convicted him. He contends this line of talk falls within the spectrum of misconduct denounced in Stasel v. Commonwealth, Ky., 278 S.W.2d 727. In that case this Court reversed a conviction because the Commonwealth's attorney stated in his closing argument what the people of the county would think of the jury if they found the defendant not guilty. It was reasoned that this was the same as telling the jury, with the trial court's approval, that if they rendered a verdict of acquittal they would receive the public disapproval of the citizens of the county.

The language we have quoted does not even remotely convey such a thought. Rather, as we view it, the jurors were merely told they had the duty of enforcing the law "when the proper case" comes along and, as the case before them was a proper

one that imposed upon them the obligation to uphold the law, they should see that it be "enforced to the highest degree."

Wherefore, the judgment is affirmed.

On Motion for Rehearing

Rehearing denied.

WILLIAMS, Judge (dissenting).

If, as Haddad offered to prove, the recording complied with basic standards of reliability (see Commonwealth v. Brinkley, Ky., 362 S.W.2d 494), was made with Henderson's knowledge, and consisted only of appropriate impeaching matter, I can see no possible justification for excluding it. Certainly it should be admissible if, as held in such cases as Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462, and Commonwealth v. Brinkley, Ky., 362 S.W.2d 494, recordings of statements by the defendant in a criminal case may be admitted as substantive evidence, even where the defendant was not aware that the recording was being made.

The decision in United States v. McKeever, 2 Cir., 271 F.2d 669, does not stand for the proposition that tape recordings are not usable for the purpose sought and under the circumstances existing in the instant case. In McKeever, the reason the recording was held unusable for impeachment purposes was that it contained a great many self-serving statements by the defendant (the taped conversation was between the defendant and a witness) which could not effectively be eliminated so as to present to the jury only the impeaching statements of the witness. The court said that to permit the playing of the recording with the defendant's statements therein would in effect amount to allowing the defendant to testify without being sworn and without opportunity for his being cross-examined. There is no such problem here, because the only statements desired to be played to the jury were those of the witness sought to be impeach-ed. The ruling in McKeever that because documents used to refresh the recollection of a witness cannot be read to the jury, a recording cannot be played to the jury for that purpose, is of no application here, since the recording here involved was not sought to be read to refresh recollection.

It is my opinion that the trial court erred in denying permission to the defendant to show that the recording complied with the appropriate standards of reliability, and then to play to the jury the impeaching statements. It is my opinion also that the disputed testimony of Henderson was of sufficient importance to require the conclusion that the error was prejudicial.

I therefore respectfully dissent.

MILLIKEN and PALMORE, JJ., join in this dissent.