Donald T. SHANKS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

May 21, 1965.

Weldon Shouse, Lexington, for appellant.

Robert Matthews, Atty. Gen., Joseph H. Eckert, Asst. Atty. Gen., Frankfort, G. L. Tucker, Commonwealth's Atty., Cynthiana, for appellee.

WILLIAMS, Judge.

Appellant Donald T. Shanks was convicted of voluntary manslaughter and sentenced to five years in the penitentiary by a jury in the Harrison Circuit Court. From a judgment pronounced upon the verdict he appeals.

Appellant, along with several other boys from Lexington, attended a New Year's Eve party in Cynthiana at the Colored Odd Fellows' Lodge. At 10:30 p. m., some sort of disturbance caused the chaperons to announce that the party was over and that the young people should go home. About this time appellant and Carlton Henry entered into a conversation which resulted in a fight. Henry struck appellant and knocked him down, whereupon appellant got up and quite a battle ensued. The two ended up lying on the floor fighting. When the fight was over Henry had received a stab wound which caused his death.

Appellant's version of the story is that he did not do or say anything to occasion the fight, that while the fight was in progress some of Carlton Henry's friends kicked him in the head, and while he was on the floor he remembers reaching into his pocket and opening his knife, but he cannot remember striking Henry with it. He testified as follows:

"Q. Did you get the knife open?

"A. I guess. It closed on my thumb. I don't remember cutting him though.

"Q. You don't remember cutting him?

"A. No sir. I remember getting it out but I don't remember stabbing him with it.

"Q. Were you concerned about your own life?

"A. Yes, I was.

"Q. Were you attempting to defend yourself?

"A. Yes sir.

"Q. Were you attempting to protect yourself?

"A. Yes sir."

The other version of the altercation differs only in who provoked it and who continued to be the aggressor. Some of the witnesses saw appellant on his feet with the knife in his hand in a striking position.

The court instructed on murder, voluntary manslaughter, and self-defense. Appellant maintains he was entitled to an involuntary manslaughter instruction.

Involuntary manslaughter is defined by common law as the unintentional killing of another occasioned by a person engaged at the time in doing some unlawful act not amounting to a felony and not likely or naturally tending to endanger life, or engaged in the doing of a lawful act in an unlawful manner. 26 Am.Jur., Homicide, section 18.

In 40 C.J.S. Homicide § 56, it is said:

"To constitute involuntary manslaughter the homicide must have been unintentional and without malice; but even though unintentional, malice may

be presumed where the accused's acts were likely to cause death, as where he used a deadly weapon."

It has long been the law in this state that, if the intention to kill is present, the doctrine of involuntary manslaughter has no place in the case. Maulding v. Commonwealth, 172 Ky. 370, 189 S.W. 251 (1916). In that case it was said:

"But where the killing is done in such manner and under such circumstances as to exclude the idea that it was not intended to kill, the crime falls under the definition of murder or of voluntary manslaughter, as the case may be, and no instruction on the subject of involuntary manslaughter should be given." Citations omitted.

Appellant pitches his case on the fact that no one actually saw the stabbing, that he cannot remember stabbing Carlton Henry, that Henry could have fallen or rolled upon the open knife, and, consequently, his death could have been accidental. However, under the common law, as we have pointed out, the killing must have been unintentional and under such circumstances as to exclude the idea that it was intentional. Where a deadly weapon was used, and where the accused admits that he was attempting to defend and protect himself with the deadly weapon, there is no room for argument that he did not intend the result of the actions taken by him.

Involuntary manslaughter was defined by the Legislature in 1962 as follows:

"KRS 435.022(1). Any person who causes the death of a human being by an act creating such extreme risk of death or great bodily injury as to manifest a wanton indifference to the value of human life according to the standard of conduct of a reasonable man under the circumstances shall be guilty of involuntary manslaughter in the first degree and shall be confined in the penitentiary for not less than one nor more than fifteen years.

"(2) Any person who causes the death of a human being by reckless conduct according to the standard of conduct of a reasonable man under the circumstances shall be guilty of involuntary manslaughter in the second degree and shall be imprisoned in the county jail for a term not exceeding twelve months or fined a sum not exceeding five thousand dollars or both."

In Lambert v. Commonwealth, Ky., 377 S.W.2d 76 (1964), "wanton" and "reckless" as used in KRS 435.022 were defined. Although appellant was doubtless guilty of both wanton and reckless conduct, his action is not fully encompassed by the definition of either. By his own testimony his action was taken, not merely in disregard or indifference of the rights of another, but for the purpose of defending and protecting himself. It is hardly consistent to say that appellant was doing what he could to defend himself but at the same time doing it wantonly or recklessly. His use of a knife, a deadly weapon, while engaged in a fight with the deceased precludes the supposition that such action would fall within the purview of the statute defining involuntary manslaughter.

■ There is another reason why it was not prejudicial for the court to refuse to instruct on involuntary manslaughter. The jury found appellant guilty of voluntary manslaughter and fixed his punishment at five years in the penitentiary. The limits of the penalty for voluntary manslaughter are not less than two nor more than twenty-one years. The five-year penalty fixed by the jury is within the range permitted for involuntary manslaughter. In Bartley v. Commonwealth, 300 Ky. 152, 188 S.W.2d 102 (1945), an involuntary manslaughter instruction was not given. The jury fixed the penalty at 15 years, which prompted this Court to say that had the involuntary manslaughter instruction been given it would

have been ignored. The Court went on to say that:

"Had the penalty been fixed at the minimum for voluntary manslaughter, then there would be reason to say that had the jury been authorized to fix a lesser penalty, they might have done so."

The identical situation exists in this case. The penalty fixed was within but greater than the minimum penalty for both voluntary and involuntary manslaughter.

Upon the whole case we do not find appellant was prejudiced by failure to instruct on involuntary manslaughter.

The judgment is affirmed.