**Isadore MARTIN, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 7, 1966.

John W. Coomes, New Castle, for appellant.

Robert Matthews, Atty. Gen., Joseph H. Eckert, Asst. Atty. Gen., for appellee.

PALMORE, Chief Justice.

The appellant, Isadore Martin, shot and killed one Augustine Redden in an argument arising in the course of a crap game. He was indicted for murder and upon trial was convicted of the lesser crime of involuntary manslaughter in the first degree and sentenced to three years' imprisonment. KRS 435.022(1). He appeals, contending that (1) he was entitled to a directed verdict of acquittal and (2) the evidence did not justify instructions on involuntary manslaughter.

It was substantially uncontradicted that Redden, a much larger and more powerful man than Martin, had knocked Martin down with a blow of his fist and was in the process of continuing the assault as Martin rose from the floor, drew a pistol, and shot him twice. Redden was unarmed, and he had no warning before the shots were fired that Martin had a gun. Relying on self-defense, Martin testified as follows:

Q—"Why did you shoot Augustine?"

A—"To get him off me."

Q—"To get him off you?"

A—"Yes, sir."

Q—"What was he doing?"

A—"Beating me, choking me."

It "sometimes happens that the evidence is all one way, and makes out a case of self-defense," in which event the defendant is entitled to a directed verdict of acquittal. Minix v. Commonwealth, 266 Ky. 801, 100 S.W.2d 825 (1937); Taul v. Commonwealth, Ky., 249 S.W.2d 45 (1952); Richie v. Commonwealth, Ky., 242 S.W.2d 1000 (1951). We do not believe, however, that this is such an instance. In *Minix,* the defendant was in an enclosed room and in the direct line of a hail of bullets being fired through a door into the room when he fired the fatal shot in return. In this case Martin was not subject to the menace of a deadly weapon. In *Taul* the decedent was threatening to kill the defendant and continued to advance upon him in face of a pointed shotgun and an express warning that he would be shot if he did not desist. In this case Redden had no warning and, so far as the evidence reveals, never knew Martin had a gun. The facts of this and the *Richie* case differ even to a greater degree.

"The mere fact that a man says he killed another in self-defense, or describes events which show that to be the case, does not have to be accepted at face value where the jury may reasonably infer from his incredibility or the inherent improbability of his own testimony, or all the revealed circumstances, that one or more of the several factors that qualify or enter into the legal right of self-defense were missing. Among these are reasonableness of the defendant's belief of imminent danger of great bodily injury or loss of life, the necessity or reasonable judgment of necessity to shoot to avert that danger, real or apparent, and the absence of aggression by the defendant." Taul v. Com-

monwealth, Ky., 249 S.W.2d 45, 47–48 (1952).

"Great latitude must be allowed the jury in determining whether the accused acted in self-defense, and unless the evidence convincingly established that the killing was in self-defense, it cannot be said as a matter of law that the homicide was excusable." Carson v. Commonwealth, Ky., 239 S.W.2d 262, 265 (1951).

It is our opinion that this is a case in which the evidence as a whole does not demand a factual conclusion that Martin was reasonably in fear of death or great bodily harm or that the apparent necessity of shooting Redden was reasonable.

The argument that there was no justification for an instruction or instructions on involuntary manslaughter is well taken. In the recent case of Shanks v. Commonwealth, Ky., 390 S.W.2d 888 (1965), under evidence more suggestive of accident vis-a-vis intentional killing than in this instance, it was held that the defendant was not entitled to such an instruction. "Where a deadly weapon was used, and where the accused admits that he was attempting to defend and protect himself with the deadly weapon, there is no room for argument that he did not intend the result of the action taken by him." Id. at 890.

It makes no difference that in *Shanks* the instruction was not given whereas in this case it was, the respective postures of the appellants in the two cases being opposite. If a defendant is not entitled to a finding of accident, neither is the Commonwealth. There is nothing to justify it one way or the other. We ascribe notable significance to the fact that the jurors expressly chose to fix Martin's punishment at three years under the KRS 435.022(1) instruction, whereas it could have been fixed at more, less, or the same under a conviction of voluntary manslaughter pursuant to the KRS 435.020

instruction. It means they deliberately rejected all of the theories of intentional homicide, which were the only theories on which the evidence justified a conviction. Necessarily, then, the error was prejudicial. It may not be said that the jurors could have given Martin the same term of years on the basis of a theory they could not bring themselves to believe, because that would have violated their oath as well as the defendant's right to depend on their moral integrity.

The cause is reversed with directions for a new trial.