William COWAN (William D. Cowen), Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Oct. 28, 1966.

Walter B. Smith, Shelbyville, for appellant.

Robert Matthews, Atty. Gen., Harold T. Hotopp, Asst. Atty. Gen., for appellee.

PALMORE, Chief Justice.

The appellant, William David (Willie) Cowen, was indicted for murder with two previous felony convictions. He appeals from a judgment entered pursuant to a verdict finding him guilty of involuntary manslaughter and prescribing a sentence of 12 years in prison. KRS 435.022(1).

The evidence presented a substantial case of self-defense, and the first question before us on the appeal is whether Willie was entitled to a directed verdict on that basis.

The fatal event took place near the corner of 10th and Union Streets in Shelbyville. 10th Street runs north and south and Union Street intersects it from the west. A place of business called the Rendezvous Club fronts on 10th Street at the southwest corner, and a barber shop was located across Union Street at the northwest corner. The decedent, Jesse Shouse, a large and powerful man, was one of several persons present on the barber shop corner when Willie Cowen emerged from the Rendezvous and started to go around to his car, which was parked on the south side of Union Street. Upon seeing Willie, Shouse immediately walked across Union Street and accosted him. After a brief conversation Shouse struck Willie on the face or head with his fist and knocked him to his knees. Willie attempted to scramble away and retreated across to the east side of 10th Street with Shouse in hot pursuit. Willie then drew a pistol from his coat pocket and fired it twice in close sequence. The second shot hit Shouse in the midsection, and he later died from its effects.

Willie testified that he fired the first shot as a warning, missing on purpose. He did not issue a spoken warning. At the moment of the second shot the two men were, according to various estimates, between 3½ and 10 feet apart, facing each other. Some witnesses said Shouse stopped when the first shot was fired, while others, including Willie, said he continued to advance. Shouse was not armed.

█ The rapid succession in which the two shots were fired is a circumstance from which a jury might reasonably infer (1) that the first shot was not intended as a warning and (2) that it did not in fact accomplish the purpose of a reasonable warning in that Shouse was not given any time to respond to it. Granting the extreme closeness of the case, nevertheless we are

of the opinion that the evidence does not establish as a matter of law that the apparent necessity (to Willie) of shooting Shouse was reasonable. See Martin v. Commonwealth, Ky., 406 S.W.2d 843 (decided October 7, 1966).

Obviously in an effort to insure infliction of a life penalty in the event Willie should be found guilty of culpable homicide in a lesser degree than murder, the grand jury charged two previous felony convictions, one in 1949 for driving a car without the owner's consent (KRS 433.220) and the other in 1952 for carrying concealed a deadly weapon (KRS 435.230). These were proved in chief through the circuit court clerk and county attorney. Then, after Willie had taken the witness chair in his own defense and had been cross-examined, the Commonwealth's Attorney renewed the interrogation for "Just one question. Tell this jury whether or not you have ever been convicted of a felony." An objection was overruled, and over further remonstrances the prosecution was permitted to extend its "one question" into an examination that covers four pages of the transcript and consisted entirely of obtaining confirmation of the two convictions theretofore proved and admission of two others, together with the respective sentences imposed in the various instances. At the end, the trial court admonished the jury that proof of the prior convictions could be considered only as affecting the witness's credibility.

█ It is a procedural rule of evidence that a witness, including a defendant who testifies for himself in a criminal case, may be impeached by proof that he has been convicted of felony. CR 43.07, formerly Civil Code § 597; RCr 13.04. Because the rule expressly allows it to be accomplished by introduction of the record, this court always has conceded the Commonwealth's right to elicit from the witness such details as would be disclosed by the record of conviction if it were introduced. Cf. Hannah v. Commonwealth, 220 Ky.

368, 295 S.W. 159, 160 (1927). This is the technical theory through which the prosecution is able to escape being confined to a mere showing that the witness has been convicted of a felony, without further elaboration.

Recognizing that no admonition can really assuage the prejudice that is done to a defendant on the merits of his case by disclosure of past felonies in the name of impugning his credibility, we are gravely troubled by the great latitude with which this courtroom device has come to be used in criminal trials. It is unnecessary and it is unfair. In this particular instance there is a reasonable probability that it was a factor in the paradoxical verdict finding Willie Cowen guilty of *involuntary* manslaughter. As in Martin v. Commonwealth, Ky., 406 S.W.2d 843 (decided October 7, 1966), it is clear that in deliberately rejecting all the theories of voluntary homicide (including self-defense) the jury resolved the case on a basis that finds no support whatever in the evidence.

■ Cowen made no attempt to suggest he did not intend to kill Shouse. Hence there was neither occasion nor justification for any instructions on involuntary manslaughter. Martin v. Commonwealth, supra. Unfortunately, however, counsel made only a blanket objection to the instructions, and he did not move for a new trial, so the error was waived. See Hartsock v. Commonwealth, Ky., 382 S.W.2d 861 (1964); Rice v. Commonwealth, Ky., 387 S.W.2d 4, 6 (1965); 3 Stanley's Instructions to Juries (1965 Supplement), § 797. Nevertheless, the verdict made possible only by this erroneous instruction provides insight to the probable prejudice occasioned by the interrogation we have already mentioned.

■■ It is our opinion that the original purpose of the impeachment statute (now CR 43.07) in referring to proof by the record was to provide against instances in which the witness might deny that he had been convicted of felony. When he admits it, there is no reason to prove the record of conviction and, perforce, no reason for such further details as may otherwise have been disclosed by it. Henceforth the rule will be so construed. A witness may be asked if he has been convicted of a felony. If he says "Yes," that must be the end of it, with the usual admonition. If he says "No," refutation by the record will be limited to one previous conviction, again with the admonition.

■ What we have said here with reference to impeachment does not, of course, limit the right of the Commonwealth to prove the previous felony convictions charged in an indictment under the habitual criminal statute, and to ask the defendant, if he takes the stand, whether he admits them. But if he does admit them, there is no occasion to dwell upon them at further length, or to bring up other convictions for the purpose of impeachment.

After shooting Shouse, Willie left the scene. Several hours later a state trooper arrested him at the home of one Laura Miles in Eminence. Also present at Laura's house was a man named Milton Hanley, whom the trooper had seen earlier in his search for Willie at the Rendezvous. During the questioning of the trooper by counsel for the Commonwealth the following exchange took place:

Q—"Who is Milton Hanley?"

A—"He is a boy from Henry County originally, now living in Shelbyville on probation, just been released—"

BY MR. SMITH: "I object."

BY THE COURT: "Overruled."

BY MR. SMITH: "Why, Judge, Your Honor—"

BY THE COURT: "Save your exception."

BY MR. SMITH: "Well, I certainly will."

Later, in the course of cross-examining Willie as to why he had left town, the prosecutor asked and was answered as follows:

Q—"All right. This story you tell the jury today you say you shot him in self-defense. Why didn't you go up to the Shelbyville Police Department and turn yourself in, instead of going to Eminence, and have to be arrested four hours later in company with a known felon, Red Hanley?"

BY MR. SMITH: "Object."

Q—"Tell this jury that."

A—"I was at Laura Miles's house."

 The trial court did not rule on the objection to this manifestly improper question. Had that been the only defect in the record we might be inclined to say it was not enough to warrant a reversal, but the accumulation of prejudicial circumstances, capped by a verdict finding Willie guilty of an offense he patently did not commit, is enough to bring the case under RCr 9.26, which provides that a conviction "shall be set aside * * * or the judgment reversed on appeal, for any error or defect when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced." We are satisfied that they were.

We are of the further opinion, though it has not been argued, that the evidence did not authorize an instruction on murder. Willie either is guilty of voluntary manslaughter or is not guilty at all, and if the evidence be the same on another trial the jury should be instructed accordingly.

The contention that because the Governor in 1961 restored Willie to his civil rights the Commonwealth cannot impeach him by proof of any felony committed prior to that time is not well taken. Const. § 145 merely provides for restoration of that which it takes away, the right of suffrage; it does not erase history. Nor does it in any way affect CR 43.07.

The judgment is reversed with directions for a new trial.