**Prince VINSON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 10, 1967.

James L. Cobb, Jr., Covington, Eugene D. Smith, Cincinnati, Ohio, for appellant.

Frank Benton, III, Commonwealth's Atty., Campbell County, John Diskin, Asst. Commonwealth's Atty., Campbell County, Newport, Robert Matthews, Atty. Gen., Charles Runyan, Asst. Atty. Gen., Frankfort, for appellee.

OSBORNE, Judge.

The appellant, a 58 year old man, is a bondsman in Cincinnati, Ohio. On the morning of February 11, 1966, at about two o'clock, he came to Newport, Kentucky, according to him, for the purpose of purchasing some Barbecue. After stopping at the Barbecue shop, he proceeded to the Orbit Room, located on Mammoth street and parked his automobile across the street from the Room. At the door of the Orbit Room he was met by Sherman Simpson, the deceased, who was approximately 30 years of age and made his home in Newport. Simpson advised the defendant that the Orbit Room was closed and that he could not enter. Some heated discussion took place at this time and Simpson used what is described as "aggressive language." Later, after talking to Buddy Parker, whom he had come to visit, appellant proceeded to his automobile across the street whereupon Parker suggested to him that he should apologize to Simpson. Appellant then went to an automobile which Simpson had entered, to make the apologies. He made the apologies and started back across the street toward his own automobile. Simpson got out and followed appellant, intercepting him at the left front door of his automobile, while appellant was attempting to unlock the door. At this point a fight ensued and resulted in appellant's shooting Simpson in the groin, from which shooting Simpson died. Appellant's version of the actual fight, as contained in the Transcript, reads as follows:

"* * * At the time I turned around Mr. Simpson was as close as right here. I went back on the front fender and Mr. Simpson hit me. I threw up this hand and when I threw up this hand he stabbed me here and that's when I lost my keys.

"Q Did he hit you or cut you with a knife at that time?

"A He stabbed me in this hand. At that point I didn't have no other alternative than to try to keep him from hurting me. He is a much larger man than I am, because I had to look up like that (witness demonstrates), and when he stabbed me here we started scuffling, Mr. Simpson and I. There had not been a shot fired at that time. I was bleeding here. I put my hand up like this (witness demonstrates). I started bleeding. He busted my lip and I was trying to get away from him, and in desperation I went to my pocket. Mr. Simpson was never that far away from me (witness indicates distance) from the time he stabbed me the first time in my hand. After he stabbed me and I am trying to get my hand in my pocket, when I came out, when I fired down, I don't know where the first shot went but they were all down to the side. Evidently when I came out of my pocket I didn't know which one hit him, or which one didn't hit him. At that time I do know I was near dying because he bruised me all across here (witness indicates location of bruise). I didn't know that until I went home and was examined. I was bruised all across here, sometime when he tore my shirt I imagine. * * *"

Appellant was found guilty of involuntary manslaughter and sentenced to ten years in the penitentiary. He now alleges three grounds for reversal. First, that he was not furnished a transcript of the testimony of the witnesses before the grand jury. Second, that a material witness re-

mained in the court room during the course of the trial even though the rule had been requested and allowed by the court. Third, error was committed by the court in giving instructions on involuntary manslaughter. As we are of the opinion that the instructions were incorrect and that the case will have to be reversed upon this ground and since the first two problems might not arise again in a retrial, we will only deal with the instructions.

■ The court properly instructed the jury upon the offenses of murder and voluntary manslaughter. The latter being the common law offense of killing under the influence of "passion" and "heat of blood." See 26 Am.Jur. Homicide, section 19. This offense is punishable under KRS 435.020 which provides for a punishment of not less than two nor more than twenty-one years. The court then, under instructions # 5 and # 6, proceeded to instruct the jury concerning the offense of involuntary manslaughter as defined in KRS 435.022. This was error. Prior to 1962 when KRS 435.-022 was enacted we followed a common law definition of involuntary manslaughter and as it only provided for a fine and jail sentence we were rather liberal in permitting its use in homicide cases. See Spriggs v. Commonwealth, 113 Ky. 724, 68 S.W. 1087. For a definition of accidental killing and involuntary manslaughter as it existed at that time, see Hunt v. Commonwealth, 289 Ky. 527, 159 S.W.2d 23. The offense of involuntary manslaughter now carries the penalty of not less than one nor more than fifteen years and is, therefore, an important offense in its own right in our law of homicide. For this reason, we believe it should not be viewed or used as an appendage to the offenses of murder and voluntary manslaughter.

■ The latest case decided by this court on the use of the involuntary manslaughter instruction was Cowan v. Commonwealth, Ky., 407 S.W.2d 695. In that case an altercation took place on Union Street in Shelbyville when Willie Cowan

was insulted by a fellow named Shouse. Shouse was a large and powerful man. He hit Willie on and about the head and face and knocked him to his knees. Willie attempted to scramble away and retreated across the street, but Shouse followed him. Willie drew a pistol from his pocket and fired twice in close sequence. The second shot hit Shouse with terminal effects. We pointed out in this case that Cowan made no attempt to suggest that he did not intend to kill Shouse. Therefore, there was neither occasion nor justification for an instruction on involuntary manslaughter. The next case in sequence before the Cowan case was Martin v. Commonwealth, Ky., 406 S.W.2d 843. Here Martin shot and killed one Augustine Redmon in an argument arising during the course of a crap game. He was indicted and convicted of the offense of involuntary manslaughter in the first degree and sentenced to three years in prison. When he was asked why he shot Augustine, his answer was, "to get him off of me" and when asked what Augustine was doing, he said, "he was biting me and choking me." In holding that an involuntary manslaughter instruction should not have been given, we said:

"The argument that there was no justification for an instruction or instructions on involuntary manslaughter is well taken. In the recent case of Shanks v. Commonwealth, Ky., 390 S.W.2d 888 (1965), under evidence more suggestive of accident vis-a-vis intentional killing than in this instance, it was held that the defendant was not entitled to such an instruction. 'Where a deadly weapon was used, and where the accused admits that he was attempting to defend and protect himself with the deadly weapon, there is no room for argument that he did not intend the result of the action taken by him.'"

In the case of Shanks v. Commonwealth, Ky., 390 S.W.2d 888, Shanks, when fighting with one Henry, stabbed and killed Henry. The court instructed on murder, voluntary

manslaughter and self-defense. The defendant insisted that he was entitled to an instruction on involuntary manslaughter. In affirming the judgment, we pointed out that where the killing is done in such manner and under such circumstances as to exclude the idea that it was not intended, the crime is either murder or voluntary manslaughter, as the case may be, and no instruction on involuntary manslaughter should be given. Pointing out that where a deadly weapon is used and where the accused admits that he was attempting to defend and protect himself with the weapon, there is no room for the argument that he did not intend the results of the actions taken by him. For an act to be covered by the statute on involuntary manslaughter it must be wanton or reckless and this by definition excludes intentional acts.

 In Lambert v. Commonwealth, Ky., 377 S.W.2d 76, the defendant Lambert and one Smith were incarcerated in the same cell block. Smith accosted Lambert and cut him severely below the ear. Lambert then started to the front of the jail and Smith accosted him again stating that he was going to cut his head off. Lambert then attacked and beat Smith with his fists and stomped him with his feet until he killed him. The court instructed on murder and voluntary manslaughter, but did not give an involuntary manslaughter instruction. We reversed the Lambert case and directed that an involuntary manslaughter instruction should be given. We stated that under the circumstances of this case, where, according to appellee's theory, there was extreme aggravation, where appellant was suffering from the effects of alcohol, where he was cut and bleeding and in a state of shock, that an instruction on involuntary manslaughter was justified. We now doubt the correctness of this opinion and wish to point out and make absolutely clear that where the intent to kill is the gravamen of the offense and where the person who is ultimately killed is the one toward whom the intent is directed an involuntary manslaughter instruction

should not be given. For these reasons the Lambert case, to the extent that it holds otherwise, is hereby overruled.

In these situations of mutual combat where one of the participants shoots, knifes, bludgeons or mauls his adversary to death, his acts being intentional and his victim known, an involuntary manslaughter instruction should not be given. Only when one acts wantonly and recklessly and death follows, not intentionally but incidentally, from the acts do we have the crime of involuntary manslaughter. There can be no doubt from the facts contained in the record but what Prince Vinson intended to defend himself against the acts of Sherman Simpson and that he intended the consequences which would naturally flow from his actions. Therefore an instruction on the offense of involuntary manslaughter was improper.

The judgment is reversed.

All concur.