Raymond C. ELLIS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

June 28, 1968.

Donald S. Muir, Paducah, for appellant.

John B. Breckinridge, Atty. Gen., James H. Barr, Asst. Atty. Gen., Frankfort, for appellee.

EDWARD P. HILL, Judge.

On April 6, 1967, while imprisoned in the McCracken County jail at Paducah, Kentucky, on a charge of armed robbery, appellant Raymond C. Ellis and two or more other prisoners, in an attempt to escape jail, attacked Ersel King, a deputy jailor, resulting in the serious cutting and wounding of

King. Upon appellant's trial in Livingston Circuit Court (where it was transferred from McCracken Circuit Court) on a charge of malicious cutting and wounding with intent to kill, he was convicted and given a term of ten years in the state prison.

Sometime after April 6, 1967, appellant entered a plea of guilty to the charge of armed robbery and received a life sentence.

This appeal is from the verdict and judgment in the malicious cutting and wounding case.

Appellant urges upon us his theory that (1) the verdict of the jury is not supported by the evidence or by the law; and (2) the trial court did not instruct upon the whole law of the case.

We note with reference to the first theory that there was considerable evidence to support appellant's theory that he did not actually wield the knife with which King was cut but only held King around the neck through the bars while another did the cutting. On the other hand, King testified appellant participated in the cutting in the following fashion:

"A. Before I even knew White was behind me he threw this cord over my neck and begin (sic) to tighten it and shoved me up against the bars and Ellis came up with a knife. The type that is used in the kitchen, kind of a paring knife and he started cutting on me. And I kept twisting from him and trying to get away from him. He made two direct stabs at my eyes and I ducked my head and the lick went up over my eyes and it cut clear to the bone over my eyes and he got one cut on the upper part of my chest that went into the cavity of my chest, I think, from the way it felt. And I finally managed to turn my back to him and . . .

"21. Was he slashing at you all this time with the knife?

"A. Yes. I * * *.

"22. Where else did he slash you? Did he slash you anywhere else?

"A. Yes. He slashed me at different places but I rolled on the bars and he couldn't follow me.

"23. Where else did he slash you?

"A. On my stomach. And I turned my back to him and that cord was still around my neck. He turned the cord loose once but I didn't have time to get away. And he took the cord in his hands and * * *.

"24. Who is 'he'?

"A. Ellis. He was inside the cell block and got ahold of the cord. And he reached around and took the knife with his left hand from Ellis.

"25. White took the knife from Ellis with his left hand?

"A. Yes.

"26. And he started gouging at my stomach and Ellis told him to cut my throat and he tried to. He got the vein but he didn't get the artery. Then, Ellis told him, he said, 'Cut the Son of a Bitch's guts out, finish him off and then we can get out of here.'

"27. Ellis was telling him this?

"A. Yeah. And I knew I wasn't going to last much longer. I had lost too much blood. I knew that they had to get somebody to go downstairs and get the keys. I didn't carry the keys upstairs with me. And I told them if they wanted the keys that they would have to go downstairs and get them. And Ellis said, 'Where are the keys?' And I said, 'They are in the drawer.' I said, 'White knows where they are. They aren't locked.' And he told White to go and get the keys and then they would finish the son of a bitch off for good."

* * * * * *

"37. Now, who did you see cut you when you were first shoved upon against the bars and stabbed?

"A. Ellis.

"38. Did you see a knife in his hands?

"A. Yes."

■ Clearly there was sufficient evidence that Ellis participated in the cutting. After all, it makes no difference in the law whether appellant actually did the cutting or only held King so that another could do the cutting.

■ The next and last theory of appellant is that he was entitled to an instruction on assault and battery, which was not given by the trial court. Under appellant's own evidence, he held King by the neck with an electric cord while another person went for keys with which to complete the jail break. This restraint upon the cut and bleeding deputy jailer was a part and parcel of the malicious cutting and wounding. Appellant was either guilty of malicious cutting and wounding or he was guilty of nothing. Furthermore, his objection to the instructions was a general one, and he filed no motion and grounds for a new trial. Under the rule in Cowan v. Commonwealth, Ky., 407 S.W.2d 695 (1966), he waived any defect in the instructions.

The judgment is affirmed.

All concur.