# Davidson v. Commonwealth.

(Decided Oct. 4, 1935.)

CROSSLAND & CROSSLAND, O. H. BROOKS, W. H. HESTER and PETE SEAY for appellant.

BAILEY P. WOOTTON, Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Just before sunset Sunday, April 23, 1933, and at a short distance west of Linnville on the state road, appellant shot, but did not kill, Raymond McClain. For this Homer Davidson, his uncle, Curtis Lee Davidson, and his nephew, Cornell Wilson, were indicted under section 1166, Ky. Stats., and upon his separate trial Homer Davidson was found guilty, his punishment fixed at two years in the penitentiary, and he has appealed.

### The Undisputed Facts.

Raymond McClain, Seaton Frank Webb, and John Summers had been to Linnville for the purpose of buying a mule. They were returning to their homes, and they were traveling west on the state road in a vehicle

described as a buckboard. The defendants accused in this indictment were traveling in a "model T" Ford. They were going east on this road and met the men in the buckboard at the time and place stated. Homer Davidson shot McClain in the right shoulder with a shotgun, inflicting a serious wound, from which McClain did not die, but by which he was and is seriously crippled. All this took place according to this record without any one in either party saying a word. Six men, a violent shooting, and not a word said. There had been bad blood between Homer Davidson and McClain for some years. The cause thereof does not clearly appear.

### The State's Version of the Shooting.

The men in the buckboard testify their horse was trotting along, that the Ford stopped suddenly just before they met it, that Homer Davidson, who was in the rear seat, got out and shot McClain, that the buckboard never did stop; that McClain was unarmed and had made no effort to shoot Davidson.

### The Defendants' Version.

The defendants testify that the buckboard stopped just before it met the Ford, and that McClain drew a pistol, whereupon Homer Davidson shot him to prevent him from shooting some of them; that Homer Davidson did not alight from the Ford and the Ford never did stop (so the uncle and the nephew testify, but the appellant testifies it did stop). So much of the other evidence as is of any importance will be stated as we discuss and dispose of the grounds relied on for reversal.

### The Indictment.

Davidson's demurrer to the indictment was overruled, and this he alleges was erroneous. So much of the indictment as is of importance follows:

"The said Homer Davidson, Curtis Lee Davidson, Cornell Wilson, in the said County of Graves, and before the finding of this indictment, did unlawfully, wilfully, maliciously and feloniously shoot and wound Raymond McClain with a shotgun loaded with powder and lead and balls and other hard substances and with the felonious intent to kill the said Raymond McClain, but from which shooting and wounding the said Raymond McClain did not die."

The indictment then continues and charges Davidson's

uncle and nephew were then and there present and did aid, abet, counsel, advise, and encourage Homer Davidson, etc.

Davidson cites the case from Com. v. Patrick, 80 Ky. 605, 607, and that of Cupp v. Com., 87 Ky. 35, 7 S. W. 405, 9 Ky. Law Rep. 877, in support of his demurrer. A similar indictment was held bad in the Patrick Case and the indictment was somewhat questioned in the Cupp Case and under the law as it then was—see the statute cited in the Patrick Case—those opinions are correct, but such criticism has no application to this indictment, for now by section 1128 an aider and abettor may be prosecuted and convicted jointly with or severally from the principal for a violation of section 1166 and punished the same as the principal, which was not true under the former statute. We so held in Com. v. Lawson, 165 Ky. 4, 176 S. W. 359, where the question is elaborately discussed and numerous cases cited, and this question is there decided adversely to Davidson's contention. We have since adhered to the ruling in the Lawson Case in McGehee v. Com., 181 Ky. 422. 205 S. W. 577; Watkins v. Com., 227 Ky. 100, 12 S. W. (2d) 329; Shively v. Com., 227 Ky. 748, 14 S. W. (2d) 205; Hogan v. Com., 230 Ky. 680, 20 S. W. (2d) 710; Philpot v. Com., 236 Ky. 831, 34 S. W. (2d) 718; Handy v. Com., 240 Ky. 432, 42 S. W. (2d) 532; Short v. Com., 240 Ky. 477, 42 S. W. (2d) 696; Sumner v. Com., 256 Ky. 139, 75 S. W. (2d) 790.

### Absence of Counsel.

Davidson's chief counsel, Mr. Brooks, unceremoniously left the court room, and his cocounsel, Mr. Hester, moved the court to defer the examination until his return, but even while this motion was being considered, Mr. Brooks returned and resumed the examination of the witnesses. No motion was made to set aside the swearing of the jury, and we find no merit in Davidson's complaint on this score, for we have before us and have scrutinized his examination of the witnesses, and it does not disclose any lack of capacity on the part of Mr. Brooks. Certainly no such showing of incapacity is made as was made in O'Brien v. Com., 115 Ky. 608, 74 S. W. 666, 24 Ky. Law Rep. 2511, and in that case the death penalty was inflicted, yet we affirmed the judgment.

### The Wound.

The commonwealth's attorney asked McClain to remove his shirt that the jury might see his wound, and, over the objection of the appellant, he was allowed to do so, and complaint is made of this.

This was not error. The accused admitted the making of the wound, his excuse is self-defense, and the exhibition of this wound was permissible for the aid it may have given the jury in determining the range of the shot, the relative positions of the two men, etc.

### Questions Regarding the Still.

The appellant was asked about his previous feelings towards McClain. He answered, "It was kind enough, only we had had trouble before." He was then asked this question: "I will ask you to tell the jury if you were not mad at this man and didn't threaten him because he turned you up for having a still." Defendant did not answer. He was then asked if McClain had not asked Will Dunn (the sheriff) to come down there, and if he did not get mad at McClain and make threats against him. This question he answered, "No sir." Then this question was asked him: "I will ask you if you don't know he called Will Dunn to come down there and you got mad at him and threatened to do him harm." This question was not answered. Questions similar to this first one were asked other witnesses, who answered, "No, sir."

Counsel for Davidson vigorously objected to all these questions, the objections were overruled, and appellant excepted. These questions were asked for two purposes; one was to establish a motive for the shooting of McClain, the other was to affect the credibility of Davidson as a witness by showing his dislike of McClain.

Upon the question of motive, the evidence was admissible, for in Bates v. Com., 189 Ky. 727, 225 S. W. 1085, 1092, we said:

"Evidence which tends to prove an intent or motive for the doing of an act is always competent as against one accused of a crime, and the prosecution is not restricted to proving that the accused was impelled by a single motive, but may prove several.

The existence of a motive is indicative of the probability of guilt, as the absence of a motive is indicative of innocence. 'Motive' has been defined to be an inducement, reason, cause or incentive for the doing of an act. Ellis v. Com., 146 Ky. [715], 729, 143 S. W. 425.''

See, also, Cook v. Com., 232 Ky. 613, 24 S. W. (2d) 269; Taylor v. Com., 5 Ky. Law Rep. 240, 12 Ky. Op. 233; Sneed v. Com., 236 Ky. 838, 34 S. W. (2d) 724; Marcum v. Com., 254 Ky. 120, 71 S. W. (2d) 17; Thornsberry v. Com., 256 Ky. 166, 75 S. W. (2d) 1079. The things asked about in this case bore upon the question of motive for the commission of the crime for which the witness was on trial, which is not true of the similar question asked in Canterbury v. Com., 234 Ky. 268, 27 S. W. (2d) 946.

Upon the question of affecting his credibility, the rule is that if a defendant elects to testify in his own behalf, he must submit to cross-examination just as any other witness, and appellant certainly committed a tactical error seriously affecting his credibility as a witness when he stood mute when these questions bearing on existence of a motive were asked him in front of a jury that had his liberty in its hands. See 70 C. J. p. 776 sec. 956.

### Questions Asked Codefendants.

During the cross-examination of Curtis Lee Davidson, who testified for the appellant, the commonwealth asked him if he were jointly indicted with Davidson for the shooting of McClain, and he said he was, and a similar question and answer is found in the testimony of Cornell Wilson. The appellant complains of this. By section 597 of the Civil Code of Practice it is provided that a witness may be impeached by showing he has been convicted of a felony.

In Foure v. Com., 214 Ky. 620, 283 S. W. 958, Consolidation Coal Co. v. Vanover, 166 Ky. 172, 179 S. W. 43, Stewart v Com., 185 Ky. 34, 213 S. W. 185, Sullivan v. Com., 158 Ky. 536, 165 S. W. 696, and other cases, we have held that nothing short of a final conviction can be shown, but the rule is otherwise where the witness is a codefendant indicted for the identical crime for which the accused is on trial and he is asked about that. First because it is a fact the jury already knows, since the

indictment was read to the jury at the opening of the trial, and for the further reason that it is always permissible to show the bias or interest of a witness. These questions were entirely permissible for that purpose. See Campbell v. State, 169 Ark. 286, 273 S. W. 1035; 70 C. J. p. 838, sec. 1045.

## Threats.

Davidson proved five different threats of violence made by McClain against him. One of these was communicated to him, and he claims now to have heard of another, which we shall discuss under the heading of newly discovered evidence. Thus he got the benefit of one communicated threat and four that were not communicated. McClain denied making any of these and also denied making one of the threats which the appellant now seeks to establish by one of his newly discovered witnesses.

Half of appellant's brief is devoted to a discussion of the threats he proved and the one he wants to prove by his new witness, so we will discuss the matter briefly.

A threat of violence seriously made does not in and of itself justify the man threatened in killing the one who made it, because the threat alone does not put the threatened party in imminent danger. If it be not communicated, it may be proven simply for the light it may afford the jury in determining who was the aggressor if self-defense be pleaded.

When similar plea is made and it is shown the threat was communicated, it may help the jury, not only as outlined above, but in determining the good faith of the accused in arriving at his asserted belief of impending danger. In other words, such communicated threats would entitle the accused to act upon less display of hostility. They serve no other purpose, where the plea is self-defense.

## Newly Discovered Evidence.

Appellant now seeks to show by Ollie Thomas still another violent but uncommunicated threat made by McClain, but such a threat would have made but a slight addition to the mass of such threats that was before the jury, and new trials are not usually granted for newly discovered evidence that would merely be cumulative.

By his other new witness he wants to show that shortly after this shooting he saw the parties in this buckboard pass and when about 75 yards from him he heard McClain say: "Hold me in, he beat me to it. I aimed to have got him first but he beat me to it." First, it is quite incredible that this could have been heard at that distance, and second, this which is copied from McGowan v. Com. (Ky.) 117 S. W. 387 is squarely against him:

> "The appellant also offered to prove that some two or three hours after Dunbar was cut he said 'that he was to blame in the difficulty, and that Henry McGowan was not to blame for it.' The ruling of the court in rejecting this offered evidence was correct. * * * If evidence of this character was admitted, not as a dying declaration or as part of the res gestæ, the commonwealth would often be defeated by hearsay evidence of real or pretended declarations of the prosecuting witness."

### Cross-examination of the Witness Gargus.

Emmett Gargus testified to a violent threat made against Davidson by McClain one afternoon about a year and a half or two years ago. Apparently that was as near as the witness could fix the time, yet the court allowed the commonwealth's attorney to ask this witness, in one form or another, 17 times "whether this was a year and a half or two years ago," and to ask him 16 times whether it was 1, 2, 3, or 4 o'clock. The witness adhered to his first answer, and experience induces the belief it was possibly as near as the witness could estimate the time that had elapsed. This examination was badgering and vexatious and should not have been allowed to be so protracted. 70 C. J. p. 549, sec. 708. It was, however, calculated to develop a sympathy for the witness on the part of the jury and strengthen rather than weaken his credibility. If this be improper, it was misconduct on the part of the commonwealth's attorney, which was not made a ground for a new trial. It cannot be included under the ground of admission of improper testimony.

### The Verdict and the Evidence.

Appellant's final complaint is that this verdict is flagrantly against the evidence. Davidson admitted shooting McClain, which made it incumbent that he

should excuse his act by some sort of evidence. Simmons v. Com., 207 Ky. 570, 269 S. W. 732. There is such conflict between the account of the shooting as detailed by him and his witnesses and that detailed for the commonwealth that both accounts cannot be believed. There are other matters in this evidence that may have induced the jury to disbelieve the evidence for the appellant. He testified the Ford stopped and his codfendants testify it did not. He testified he lived on the state line road, which is an improved highway leading directly past his home through Fulton to Hickman, and that he had started to take this shotgun, some boxes of fruit and other things to a man named Ross, who lived between Fulton and Hickman, yet instead of taking the improved road, he drove about six miles north to the state road, which is unimproved, and when he reached it he turned not toward Fulton county, but turned east towards Linnville, which would take him six miles further out of his way. His excuse is he was going to Linnville to get some gas and oil, but people do not usually drive twelve miles out of the way to get gas and oil, and this evidence fully warranted the belief and the jury perhaps did believe Davidson and his party were out that afternoon looking for McClain.

Judgment affirmed.