COMMONWEALTH of Kentucky, Appellant,

v.

Thomas C. BRINKLEY, Appellee.

Court of Appeals of Kentucky.

Nov. 30, 1962.

John B. Breckinridge, Atty. Gen., James G. Osborne, Asst. Atty. Gen., M. R. Mills, Madisonville, for appellant.

Earle M. Nichols, Madisonville, for appellee.

WILLIAMS, Judge.

The appellee, Thomas Brinkley, was indicted for obtaining money under false pretenses. Trial was had in the Christian Circuit Court, the jury could not agree, and a mistrial was declared. During the course of the trial the Commonwealth proposed to offer as evidence a recording of a telephone conversation between the appellee and the prosecuting witness and a recording of a conversation between the same two while sitting in an automobile. The trial court refused to permit the introduction of those recordings as evidence.

By this appeal the Commonwealth seeks a certification of law on that issue. The recording of the telephone conversation was made by the sheriff with the aid of the

prosecuting witness by attaching a microphone to the telephone receiver located in the prosecuting witness' home. The second recording was made by the sheriff who, with permission of the prosecuting witness, secreted himself in the trunk of an automobile where he listened to and made a recording of a conversation between appellee and prosecuting witness.

The question of admissibility of recordings made in the manner recited above has not heretofore been determined by this Court. Similar questions have received rather extensive treatment in Federal Courts, however. Of primary consideration in the Federal cases has been the interpretation of the Federal Communications Act of 1934, Title 47 U.S.C.A. § 605, which provides in part:

> " * * * no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; * * * and no person having received such intercepted communication or having become acquainted with the contents, substance, purport, effect, or meaning of the same or any part thereof, knowing that such information was so obtained, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of the same or any part thereof, or use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto * * *." 47 U.S.C.A. Section 605.

Some of the earlier Federal decisions prohibited the use of information gained by interception of telephone communications as well as the introduction of a recording made of the conversation heard by reason of such interception. See Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314, and Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307. It was held that Section 605 forbids any person, unless authorized by the sender, to intercept a telephone message, and further prohibits any person from divulging or publishing the message or its substance. Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298, holds that evidence obtained by wiretapping of intrastate as well as interstate conversation is inadmissible even though one of the parties to the conversation consented to the interception. And in United States v. Polakoff, 2 Cir., 122 F.2d 888, a conversation was recorded from a telephone extension which one of the parties was using. The Court held evidence thus obtained was inadmissible on the ground that each person to a conversation is a sender and conversation may not be used unless consent is had of both parties. It was said in that case that the interception need not be a physical interception of the transmission of the conversation and that the means which is employed has no importance; but it is the "breach of privacy that counts."

The more recent trend in the Federal opinions, however, has been toward a more strict construction of Section 605. In Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134, the Supreme Court held that a conversation heard on a telephone extension was admissible in evidence and did not violate Section 605. The Court said:

> "The clear inference is that one entitled to receive a communication may use it for his own benefit or have another use it for him. The communication itself is not privileged, and one party may not force the other to secrecy merely by using a telephone."

In the recent case of Carnes v. United States, 5 Cir., 295 F.2d 598, the United States Court of Appeals, Fifth Circuit, having analyzed the several opinions which preceded it, said:

> "Two major principles may be extracted from these cases: First, testimony as to a telephone conversation listened to with the consent of only one of the parties to the conversation is not inadmissible under Section 605.

Second, such testimony does not become inadmissible simply because it was recorded by an electrical or mechanical device attached to an extension phone or telephone wiring at the locality of the consenting parties."

In Carnes, recordings of telephone conversations were obtained by means of an attachment placed on the earpiece of a telephone with the consent of the party at that end of the line. It was said that both the consenting party and the eavesdropper would be free to divulge the contents of the conversation in the court room or elsewhere; the only function served by the recording was to preserve a permanent and accurate record of the conversation.

There is another line of cases which consider the problem as regards a possible violation of the Fourth Amendment to the Constitution of the United States. In Olmstead v. United States, 277 U.S. 438, 48 S. Ct. 564, 72 L.Ed. 944, 66 A.L.R. 376, it was held that wire-tapping as such does not involve a search or seizure prohibited by the Fourth Amendment. There wire-taps were made in the basement of a large office building and made without trespass on the defendant's property. The cases which follow Olmstead, both in time and theory, involve eavesdropping which had not been accomplished by means of an unauthorized physical encroachment within a constitutionally protected area.

In Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322, Federal officers placed a detectaphone against an office wall and listened to conversations taking place in the office next door. The Supreme Court declared that did not violate the Fourth Amendment. In On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270, a Federal agent who was acquainted with the accused went into his laundry and engaged him in incriminating conversation. The agent had a microphone concealed on his person which fed into a receiving set operated by another agent outside the building. Testimony of the agent who was outside the building concerning what he heard was admitted and declared to be no violation of the Fourth Amendment.

In an opinion decided in June 1962, State v. Carbone, 38 N.J. 19, 183 A.2d 1, the Supreme Court of New Jersey certified a matter similar to the one under consideration here. During a raid conducted under a search warrant, a police officer answered the telephone. He was permitted to testify as follows:

"I picked up the phone and said, 'Hello,' and the caller said, 'Pat,' and I said, 'Yes.' He said, 'Give me Silky Jet at Laurel, five across.'"

That Court determined that the Federal rule excluding evidence obtained in violation of the Federal Statute (Section 605) does not apply to the states. That finding is based on the holding of the Supreme Court in Schwartz v. Texas, 344 U.S. 199, 73 S. Ct. 232, 97 L.Ed. 231, in which it was said:

"§ 605 applies only to the exclusion in federal court proceedings of evidence obtained and sought to be divulged in violation thereof; it does not exclude such evidence in state court proceedings."

Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, was considered and found not to be in conflict.

The later expressions of the various courts lead us to the conclusions that a recording made of a telephone conversation by an attachment placed on the receiver of the consenting party to the conversation does not violate the provisions of Section 605; nor is it an unauthorized encroachment within a constitutionally protected area as would be violative of the provisions of the Fourth Amendment; and, finally, the Federal rule excluding evidence obtained in violation of Section 605 does not apply to the states. Consequently, other factors having been met, the recording made of the telephone conversation between appellee and prosecuting witness is not in-

admissible. In like manner the recording of the conversation made in the automobile could not have been violative of Section 605. See Anno. in 58 A.L.R.2d, beginning at page 1026. Nor does its admission violate the provisions of the Fourth Amendment according to the theory recited in the cases cited above.

However, one of the most recent decisions of the United States Supreme Court hoists a warning flag which should not be ignored. In that case, Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734, Federal agents inserted a "spike mike" into a party wall where it came into contact with a heating pipe. The heating system thereby became a giant transmitter of conversations made anywhere within its general area. The Court held that receipt of the messages through the "spike mike" was not an interception within the meaning of Section 605, but was a violation of the Fourth Amendment, the reason being that the eavesdropping was accomplished by means of an unauthorized physical penetration into private premises. It was said:

"We find no occasion to re-examine Goldman here, but we decline to go beyond it, by even a fraction of an inch."

Having determined that the recordings in question are not inadmissible, we point out that before they may be admitted into evidence a proper foundation must be laid. We note that the Supreme Court of Georgia, in Steve M. Solomon, Jr., Inc. v. Edgar, 92 Ga.App. 207, 88 S.E.2d 167, said that a proper foundation for the admission of a recording would consist of (1) a showing that the mechanical transcription device was capable of taking testimony, (2) a showing that the operator of the device was competent to operate the device, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the record, (6) identification of the speakers, and (7) a showing that the testimony elicited was freely and voluntarily made, without any kind of duress. See also Wright v. State, 38 Ala.App. 64, 79 So.2d 66, wherein the Supreme Court of Alabama makes suggestions as to the procedure which might be followed in the event of an objection to the introduction of a recorded statement.

Recordings of conversations made under circumstances recited herein are admissible into evidence provided a proper foundation is first established for their admission.

The law is so certified.

MOREMEN, Judge (dissenting).

I believe the majority opinion correctly outlines the trend, so apparent from the recent opinions of the various courts, to permit the introduction of evidence obtained by means usually designated as wire tapping. The older cases were firm in the protection of a person's privacy.

The doctrine of privacy, independent of constitutional guarantees, was advanced rather recently in the development of law— about seventy years ago. This doctrine arose, it seems, from the fact that the steady increase of the population of this country was accompanied, as it must always be, by a decrease in privacy because of a similar decrease in space.

We are now in a period when the population is increasing so fast that the phenomenon has been called "a population explosion." It seems to me that if space which permits movement is progressively diminished by this increase in population the protection granted by the law should be increased so that at some periods in his day a person will have the feeling that he is alone and protected from sly molestation.

Although other reasons have been assigned, Section X of the Kentucky Constitution and the IV Amendment to the United States Constitution were primarily en-

acted, it seems to me, for the purpose of granting to a person one place where he would be at least temporarily secure from unwarranted intrusion. This recognition of a right to believe one is temporarily safe has long been a part of our law. Remember the right of sanctuary the church offered even to fugitive criminals in England and other European countries? Our most modern fallout shelters attest to the fact that everyone still desires the right to hope for survival and a place to hide.

The development in the electronic field has been such that one may sit in his living room and hear signals called in a football game two thousand miles away—and the quarterback is not wired for sound. The shotgun microphone which may pick up conversations from a distance of more than two hundred yards becomes more dangerous than the weapon for which it was named when it receives legal approval as a vehicle for transmission of evidence into court.

Where are the ancient safeguards of the oath and the solemnity of the occasion or the trappings of a formal courtroom which warn a witness that now the truth must be told? Persons engaged in ordinary conversations are not too careful with their facts or even their ideas. If idle conversations are to be trapped, recorded and used against the communicants, no guaranty of truth is obtained.

That, however, does not worry me too much. My concern arises from the fact that we are abandoning a tenet of legal philosophy at a time when it is most needed. When the country is becoming so crowded that it is often difficult to determine where one large city ends and another begins, any concept which attempts to assure privacy should be cherished.

In Kentucky, in this case, we now have the right to retain the philosophy of the old cases which guarded the private rights of man. Instead we have opened the door to the eavesdropper. I believe that Justice

Holmes was correct when he dismissed the whole manipulation as being "dirty business."

I would certify the law contrary to that expressed by the majority.