**Earl CARRIER, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 7, 1980.

Rehearing Denied May 9, 1980.

Discretionary Review Denied Nov. 18, 1980.

Robert D. Simmons, Bowling Green, Bart Adams, Louisville, for appellant.

Steven L. Beshear, Atty. Gen., Patrick B. Kimberlin, III, Asst. Atty. Gen., Frankfort, for appellee.

Before GANT, BREETZ and VANCE, JJ.

GANT, Judge.

Appellant Carrier was convicted of the offense of bribing a witness and appealed on the grounds that two tape recorded conversations between the appellant and an informant, one David Byrd, were admitted over appellant's objection.

The evidence in this case was that Carrier had his live–in girlfriend write to Byrd at Eddyville State Penitentiary on September 14, 1978, informing Byrd that Carrier wanted to see him on September 28. Byrd was returned to the Warren County Jail in September to testify as a witness in a case of first degree criminal mischief against one Kenneth Howell. On September 18, Byrd contacted Bob Bridgewater, a federal ATF agent, in regard to a purported attempt to have Byrd change his testimony in the Howell case. Bridgewater took Byrd to the office of Morris Lowe, the Commonwealth Attorney for the Warren circuit, where they were joined by a Kentucky State Police narcotics agent. In Lowe's office, with Byrd's consent, electronic surveillance was arranged and a tape recorder placed on the telephone. A collect call was made to a number in Louisville which was subsequently identified as Carrier's and in the ensuing 30–minute conversation, the other person identifying himself as Earl, arrangements were made to deliver $2,000 in cash to Byrd in exchange for his refusal to testify against Howell and another individual.

Surveillance the next day did not produce results and a second call was made by Byrd on September 21, with Sgt. Marvin Franklin of the Kentucky State Police having set up a tape recorder and electronic surveillance on this call. This call was again identified as having been made to the Louisville number of Earl Carrier.

In both of these electronically monitored conversations, one of more officers listened to the dialogue which was being recorded and testified that there were no changes, deletions or alterations in the tape and that the tapes presented to the court replayed the exact conversations between Byrd and the person on the other end of the phone call. Those persons present during the surveillance further testified that the surveillance was with Byrd's express consent and that the tapes were replayed in Byrd's presence immediately after the telephone conversations, Byrd verifying their authenticity at that time.

Subsequent to the second conversation, Carrier drove to Bowling Green with his girlfriend and $2,000 in cash, delivering the money to an intermediary, as per arrangement with Byrd, and directed the intermediary to delivery it to Byrd, who was expecting it. When the intermediary went to her attorney's office on other business, the officers who had had this transaction under surveillance confronted the intermediary, taking her and the money to Byrd, who was in jail.

■ Appellant first argues that the use of the tape recordings of his conversations with David Byrd violated his rights under the Fourth Amendment to the United States Constitution and Section 10 of the Constitution of Kentucky. The case of *United States v. McMillan*, 508 F.2d 101, 104 (8th Cir. 1974), is dispositive of the Fourth Amendment argument when it states:

It is now well settled that a defendant's Fourth Amendment rights are not violated when the defendant's conversations with a government informant are electronically monitored by a government agent with the consent of the informant.

E. g., *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d [453] 456 (1971) (opinion of White, J., in which the Chief Justice and Stewart and Blackmun, JJ. concurred); *United States v. Bonanno*, 487 F.2d 654 (2d Cir. 1973); *United States v. Bishton*, 150 U.S.App.D.C. 51, 463 F.2d 887 (1972); *United States v. Quintana*, 457 F.2d [874] (10th Cir.), cert. denied, 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130 (1972); *United States v. Holmes*, 452 F.2d 249 (7th Cir. 1971) cert. denied, 405 U.S. 1016, 92 S.Ct. 1291, 31 L.Ed.2d 479, 407 U.S. 909, 92 S.Ct. 2433, 32 L.Ed.2d 683 (1972); cf. *United States v. Skillman*, 442 F.2d 542 (8th Cir.), cert. denied, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971).

Nor is the attempt to utilize Section 10 of the Constitution of Kentucky any more valid. This section is almost identical to the wording of the Fourth Amendment and we see no reason for Kentucky to depart from the federal norm. See also KRS 526.010, which defines "eavesdrop" as "to overhear, record, amplify or transmit any part of a wire or oral communication of others *without the consent of at least one party thereto*, by means of any electronic, mechanical or other device."

■ Appellant next contends that improper foundation was laid or established for admission of the two tape recordings. The ground rules are clearly established in *Commonwealth v. Brinkley*, Ky., 362 S.W.2d 494, 497 (1962):

[A] proper foundation for the admission of a recording would consist of (1) a showing that the mechanical transcription device was capable of taking testimony, (2) a showing that the operator of the device was competent to operate the device, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the record, (6) identification of the speakers, and (7) a showing that the testimony elicited was freely and voluntarily made, without any kind of duress.

The identical test is provided in *United States v. McMillan, supra,* convincing us even further that the federal and state laws on the subject are the same in all respects.

Appellant contends that requisites numbered (3), (6) and (7) were not established. We disagree.

█ The testimony of Detectives Wood, Franklin and Railey clearly established that the recordings were authentic and correct, testifying that they listened to the conversation, that it was an exact reproduction thereof and that the tape had been played back immediately after recording in Byrd's presence.

In regard to the identification of the speakers, in both conversations the recipient of the collect call identified himself as "Earl," the telephone company official testified that the number called, on both occasions, was to a phone listed in the name of Earl Carrier. Additionally, the courts have held that where the scenario arranged on the telephone and that subsequently enacted were identical, the substance of the communication itself may be enough to make prima facie proof. *See Van Riper v. United States,* 13 F.2d 961, 968 (2d Cir. 1926), cert. denied, 273 U.S. 702, 47 S.Ct. 102, 71 L.Ed. 848 (1926); *United States v. Bonanno,* 487 F.2d 654, 659 (2d Cir. 1973); *United States v. McMillan, supra,* page 105.

In the instant case, the scenario arranged by the telephone conversation was that the appellant would come to Bowling Green and bring with him some $2,000 in cash, all of which was done within a few short days of the telephone conversation. The substance of the communication itself clearly indicates the identity of the persons involved in the conversation.

█ Appellant also fails in his contention that there was no showing that the testimony elicited was freely and voluntarily made, without any kind of duress. The problem which arose in the instant case, and which is the subject of appellant's next objection, was that David Byrd refused to take the oath or to testify in this case. However, three law enforcement officers testified that David Byrd gave his permission for the electronic recording of the conversation, that it was done freely and voluntarily, without any sign of duress. It has long been held that the testimony of the informant himself is not necessary in order to establish his consent. *See United States v. Bonanno, supra; United States v. James,* 495 F.2d 434 (5th Cir. 1974) cert. denied, 419 U.S. 899, 95 S.Ct. 181, 42 L.Ed.2d 144 (informant murdered shortly before trial); *United States v. Rangel,* 488 F.2d 871 (5th Cir. 1974), cert. denied, 416 U.S. 984, 94 S.Ct. 2386, 40 L.Ed.2d 760 (informant unavailable); *United States v. Lemonakis,* 158 U.S. App.D.C. 162, 485 F.2d 941 (D.C.1973), cert. denied, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (informant committed suicide); *United States v. Haldeman,* 181 U.S.App. D.C. 254, 559 F.2d 31 (D.C.1976) (evidence established consent even though former President Nixon did not testify).

█ Appellant further urges that he was denied his Sixth Amendment right to confront the witness against him. We feel that the case of *United States v. Lemonakis, supra,* 158 U.S.App.D.C. at 169-170, 485 F.2d at 948–949, is dispositive of this when the court concluded:

> ... that the statements were made is all that is important, and the recordings themselves suffice to establish that. The right to cross–examine the absent informant under oath, to test his recollection, prove his motives, and permit the jury to consider his demeanor is therefore inapplicable, and hearsay considerations do not operate as a bar to admissibility.

It is clear that the recorded conversations herein fall within the exceptions to the hearsay rule and that the appellant's right to confrontation was not violated. *See Maynard v. Commonwealth,* Ky.App., 558 S.W.2d 628 (1977).

The judgment is affirmed.

All concur.