Boyd Allen BROCK, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 94–SC–1001–MR.

Supreme Court of Kentucky.

Jan. 30, 1997.

Barbara C. Carnes, Barbourville, for appellant.

A.B. Chandler, III, Attorney General, Karen Quinn, Criminal Appellate Division, Office of Attorney General, Rickie L. Pearson, Criminal Appellate Division, Office of Attorney General, Frankfort, for appellee.

COOPER, Justice.

On May 4, 1994, Appellant Boyd Allen Brock killed Bill "Doc" Partin by shooting him with a 9–mm semiautomatic pistol. Appellant asserts he killed Partin in self-defense. Following a trial by jury, Appellant was convicted of first-degree manslaughter and sentenced to confinement in the penitentiary for twenty years. He appeals to this Court as a matter of right. Ky. Const., § 110(2)(b).

## I. MOTION FOR DIRECTED VERDICT

Since Appellant's first claim of error is that he was entitled to a directed verdict of acquittal, it is necessary to summarize the facts leading up to Partin's death.

The first relevant confrontation between Appellant and Partin occurred on April 19, 1994 when Partin came to Appellant's home and accused him of killing two of Partin's hunting dogs. Partin was intoxicated and armed with a handgun at the time. Appellant managed to disarm Partin and gave the weapon to Partin's nephew, Kevin Smith, who had arrived on the scene after receiving a call from Appellant's wife. Before leaving with Smith, Partin threatened Appellant with bodily harm if another of Partin's dogs should be killed.

On May 4, 1994, Appellant, his wife and their four children were in a vehicle traveling away from their home when they encountered Partin's truck stopped on a one-way bridge near Appellant's home. Appellant was unsure whether Partin's vehicle was stalled and he needed help, or whether Partin intended to carry out his previous threat. Appellant backed his vehicle into an adjacent driveway on property owned by his niece, Denise Knuckles. Appellant's wife removed a 9–mm semiautomatic pistol and an extra clip from the glove compartment and handed them to Appellant. Appellant then got out of the vehicle and directed his wife to return home with the children. Appellant took cover behind a nearby building on Knuckles' property.

Meanwhile, Partin had left his vehicle and began advancing toward Appellant's position armed with a .38 caliber revolver. Appellant claims Partin fired first and that he responded with a burst from his 9–mm semiautomatic; that Partin went down and fired back from the ground; that Appellant returned fire; that Partin fired again from his position on the ground; and that Appellant again returned fire, ultimately inflicting the fatal wounds. An eyewitness, Paul Green, testified that he could not see Appellant, but that he did see Partin leave his vehicle and walk toward Knuckles' property. Green then heard an automatic weapon fire about three times, following which he saw Partin return fire. Green first testified that Partin's arms were at his side when he heard the shots from the automatic weapon. Later, he testified that Partin's arm appeared to be coming around when the first shots were fired. The remainder of Green's testimony is consistent with Appellant's version. After firing his weapon, Partin fell to the ground and fired again. Green then heard a second round of automatic weapon fire. Partin fired again, following which there was a third round of automatic weapon fire. Appellant then came to Green's house and stated, "Paul, call an ambulance, I had to do it."

On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Commonwealth v. Benham,* Ky., 816 S.W.2d 186, 187 (1991).

Although the Commonwealth has the burden of proof, it does not have to rebut evidence of a defense. KRS 500.070(1). The defendant is not entitled to a directed verdict of acquittal, unless the defense is conclusively established. *West v. Commonwealth,* Ky., 780 S.W.2d 600 (1989).

It is only where evidence for a defendant conclusively establishes justification that he is entitled to a directed verdict.... If the testimony relied on to establish self-defense is contradicted or if there is evidence of any fact or circumstance from which a jury could reasonably conclude that some element of self-defense was lacking, a directed verdict should not be given.

*Townsend v. Commonwealth,* Ky., 474 S.W.2d 352, 353–354 (1971). *See also, Stepp v. Commonwealth,* Ky., 608 S.W.2d 371, 373 (1980); *Wheeler v. Commonwealth,* Ky., 472 S.W.2d 254, 256 (1971).

The fact that Partin threatened Appellant fifteen days prior to the shooting was a factor for the jury to consider, but did not entitle Appellant to a directed verdict of acquittal. "A threat of violence seriously made does not in and of itself justify the man threatened in killing the one who made it, because the threat alone does not put the threatened party in imminent danger." *Davidson v. Commonwealth,* 261 Ky. 158, 87 S.W.2d 119, 122 (1935). Such threats "may help the jury ... in determining the good faith of the accused in arriving at his asserted belief of impending danger." *Id.*

Appellant relies on *Taul v. Commonwealth,* Ky., 249 S.W.2d 45 (1952) for the proposition that, ordinarily, a defendant must prove his claim of self-defense unless the evidence presented by the prosecution shows a state of facts justifying the act. However, in *Taul,* we also stated:

> The mere fact that a man says he killed another in self-defense, or describes events which show that to be the case, does not have to be accepted at face value where the jury may reasonably infer from his incredibility or the inherent improbability of his own testimony, or all the revealed circumstances, that one or more of the several factors that qualify or enter into the legal right of self-defense were missing. Among these are reasonableness of the defendant's belief of imminent danger of great bodily injury or loss of life, the necessity or reasonable judgment of necessity to shoot to avert that danger, real or apparent, and the absence of aggression by the defendant.

*Id.* at 47–48.

The evidence does not conclusively establish justification. Appellant had ample opportunity to avoid the confrontation. In fact, after Appellant got out of his vehicle, his wife was able to safely drive herself and their children away from the scene. Considering the history between Appellant and Partin and the manner in which Appellant armed himself and sent his family to safety, it was reasonable for the jury to conclude that Appellant intended to violently confront Partin. Paul Green's testimony that Appellant shot first from behind a building while Partin's arms were at his side sufficed to support a finding by the jury that Appellant was the initial aggressor and did not kill Partin in self-defense.

## II. DISMISSAL OF DEFENSE WITNESS

On the first day of the trial, the trial judge dismissed defense witness Lowell Partin, the victim's brother, after Lowell complained that he was missing work and had no information to offer which would be helpful to the defense. The trial judge permitted defense counsel to question Lowell Partin in chambers in what amounted to an avowal. During this questioning, Lowell Partin denied knowing that Bill "Doc" Partin had pulled a gun on two other persons prior to the shooting. He also denied having had a telephone conversation with his mother, Della Partin, in which they discussed Bill "Doc"'s drunken state, that someone needed to keep beer from him, that he was going crazy, and that he was dangerous. Defense counsel proposed to impeach Lowell Partin with a tape recording of a telephone conversation between him and his mother in which he is alleged to have made a prior inconsistent statement.

In Kentucky, a prior inconsistent statement is used not only to attack the credibility of the declarant, but also constitutes substantive evidence with respect to the matter asserted. KRE 801A(a)(1); *Jett v. Commonwealth,* Ky., 436 S.W.2d 788 (1969). A statement is inconsistent for purposes of KRE 801A(a)(1) whether the witness presently contradicts or denies the prior statement, or whether he claims to be unable to remember it. *Wise v. Commonwealth,* Ky.App., 600 S.W.2d 470, 472 (1978). Since Lowell Partin had offered no direct evidence relevant to any issue in this case, Appellant's sole purpose in attempting to confront him with his prior recorded statement was not to attack his credibility, but to introduce the recording as direct evidence in support of his claim of self-protection, *i.e.,* substantive evidence for the defense. Thus, the statement is subject to scrutiny for relevance. Appellant asserts that the statement was relevant to prove Bill "Doc" Partin's state of mind on the date of the shooting. However, the tele-

phone conversation between Lowell Partin and Della Partin occurred at 4:00 p.m. on April 22, 1994, twelve days before the shooting took place. The trial judge found that Lowell Partin's observations of Bill "Doc"'s demeanor on April 22, 1994 did not tend to prove Bill "Doc"'s state of mind when the shooting took place twelve days later. KRE 401.

 We need not address the relevancy/remoteness issue head on, or even determine whether the proffered evidence was accompanied by the minimum foundation requirements of KRE 701 necessary to qualify Lowell Partin to express an opinion concerning Bill "Doc"'s state of mind on April 12, 1994. *See generally* Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 6.05 (3rd Ed., Michie, 1993). Appellant admits that any possible error in dismissing Lowell Partin, thereby excluding this evidence, was not properly preserved. Instead, he invokes the palpable error rule. KRE 103(e). That rule requires a showing of "manifest injustice," and, in that respect, it parallels RCr 10.26. We have interpreted the requirement of "manifest injustice" as used in RCr 10.26 (formerly RCr 9.26) to mean that the error must have prejudiced the substantial rights of the defendant, *Schaefer v. Commonwealth*, Ky., 622 S.W.2d 218 (1981), *i.e.*, a substantial possibility exists that the result of the trial would have been different. *Partin v. Commonwealth*, Ky., 918 S.W.2d 219, 224 (1996). One federal court has interpreted FRE 103(e), which is identical to KRE 103(e), as requiring that the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. *United States v. Filani*, 74 F.3d 378 (2nd Cir.1996). With these principles in mind and considering the marginal relevancy of the proposed evidence, we conclude that the trial judge's suppression of the evidence offered to impeach Lowell Partin and the dismissal of Lowell Partin as a witness for the defense did not rise to the level of palpable error.

## III. TAPE RECORDING OF TELEPHONE CONVERSATION BETWEEN DELLA PARTIN AND SHIRLEY WILLIAMS

Bill "Doc" Partin's mother, Della Partin, was called as a defense witness to prove that Bill "Doc" went to Appellant's neighborhood on May 4, 1994 with a purpose to kill Appellant. Appellant's counsel was in possession of a tape recorded telephone conversation between Della Partin and Shirley Williams in which Della Partin told Williams that Bill "Doc" had come over to Della Partin's house on the day of the shooting. During the conversation, Della Partin made the following statements to Shirley Williams:

> "Bill was drinking and went over there to kill him and got killed hisself.
>
> . . .
>
> ". . . I went out to the truck and I seen Bill "Doc" was drunk.
>
> ". . . He said, 'I am going to kill him, I am going to kill him.' I said, 'Bill, as soon as you get over there, they will call the law on you now.' That is the last words I spoke to him."

Mrs. Partin testified that she could not recall Bill "Doc" Partin coming to her home on the day of the shooting. When asked specifically whether Bill "Doc" had told her that he was going to Appellant's house to kill him that day, Mrs. Partin replied, "No, he didn't." She then claimed not to remember the telephone conversation with Shirley Williams. When Appellant's counsel announced her intention to confront Mrs. Partin with her prior inconsistent statement by playing the tape for her, KRE 613, *compare Davis v. Commonwealth*, Ky., 795 S.W.2d 942, 950–951 (1990), the trial judge sustained the prosecutor's objection, thus precluding any further attempt to impeach the witness with that recording. The trial judge did allow the tape recording to be filed in the record as an avowal.

Appellant's counsel then called Shirley Williams to the witness stand to inquire about the same conversation. Williams remembered the conversation, but claimed not to remember any of the details thereof. She admitted that if she heard a recording of the conversation, it might refresh her recollection. When Appellant's counsel offered to play the recording in an attempt to refresh

Williams' recollection, KRE 803(5), the trial judge again sustained the prosecutor's objection, but allowed the recording to be filed in the record as an avowal.

### a. Use of tape recording to impeach Della Partin.

Even an uncommunicated threat by the deceased against the defendant is admissible to show the deceased's state of mind prior to the killing and as evidence to prove who was the aggressor. *Wilson v. Commonwealth*, Ky., 551 S.W.2d 569 (1977). Thus, the statements alleged to have been made by Bill "Doc" Partin to his mother just prior to the shooting were clearly relevant. KRE 401; Lawson, *supra*, § 2.20, at 80. The trial judge stated his reason for excluding the evidence as being that the record was replete with evidence of "bad blood" between Appellant and Bill "Doc" Partin, and that the statements contained in the recorded conversation were merely cumulative. Essentially, the trial judge weighed the probative value of the evidence against the consideration of needless presentation of cumulative evidence. KRE 403. Although trial judges are accorded substantial discretion in performing this KRE 403 balancing test, that discretion is not unlimited. When the fatal confrontation occurred on May 4, 1994, both Appellant and Bill "Doc" Partin were armed and each fired his weapon at the other. Thus, the primary evidentiary fact to be decided by the jury as framed by the instruction on self-protection was which party was the initial aggressor. Evidence that shortly before the encounter, the deceased told his mother that he was going to Appellant's house with a purpose to kill him was more than just cumulative evidence of "bad blood." It was evidence which the jury may well have found decisive on Appellant's claim of self-defense. Exclusion of this evidence on grounds that it was cumulative was outside the discretion normally exercised by a trial judge in performing the KRE 403 balancing test.

The Commonwealth asserts that the taped conversation was properly suppressed because it was illegally obtained in violation of the eavesdropping statute. KRS 526.020. In fact, the record is silent as to whether the recording was obtained without the consent of one of the parties to the conversation. But assuming that it was illegally obtained, the so-called "exclusionary rule" applies only to evidence obtained in violation of a constitutional right, *Beach v. Commonwealth*, Ky., 927 S.W.2d 826 (1996); and both the Fourth Amendment to the United States Constitution and § 10 of our Constitution apply only to state actions, not actions of private citizens. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Stone v. Commonwealth*, Ky., 418 S.W.2d 646 (1967), *cert. denied*, 390 U.S. 1010, 88 S.Ct. 1259, 20 L.Ed.2d 161 (1968). Since there is no evidence that the tapes were obtained in violation of a constitutional right, the exclusionary rule cannot be applied to prevent their introduction.

The Commonwealth next argues that the tape recording was not properly authenticated, because it did not satisfy all of the foundation requirements enumerated in *Commonwealth v. Brinkley*, Ky., 362 S.W.2d 494, 497 (1962), *viz*: (1) the transcription device was capable of taking testimony; (2) the operator of the device was competent to operate it; (3) the recording is authentic and correct; (4) changes, additions and deletions have not been made; (5) a showing of the manner of preservation of the recording; (6) identification of the speakers; and (7) the testimony elicited was freely and voluntarily made without any kind of duress. Professor Lawson notes that the "burdensomeness of these requirements virtually guaranteed that the Court would have to revisit the issue of foundation for this kind of evidence, not because such a rigorous foundation would never be warranted but rather because such a foundation would not always be warranted." Lawson, *supra*, § 7.10, at 327. And, in fact, we have twice revisited this issue, first in *Poteet v. Commonwealth*, Ky., 556 S.W.2d 893 (1977), and again in *Campbell v. Commonwealth*, Ky., 788 S.W.2d 260 (1990).

In *Poteet*, the defendant was convicted partly on the basis of tape recordings of his conversations with an undercover police officer. We held that the police officer's testimony that the conversations on the tapes were accurate reproductions of his conversa-

tions with the defendant established the integrity of the recordings. 556 S.W.2d at 895. In *Campbell,* an alleged statement by the defendant was recorded on a telephone answering machine owned by the victim. Two witnesses identified the voice on the machine as being that of the defendant. This was held to be sufficient authentication to admit the recording into evidence. These two cases were followed by the 1992 adoption of KRE 901(a), which requires for authentication only that evidence be introduced sufficient to support a finding that the matter in question is what its proponent claims. Thus, if Della Partin's voice on the tape recording can be identified, and/or if either Della Partin or Shirley Williams should testify that the recording is an accurate reproduction of their conversation, the recording would be sufficiently authenticated to permit its introduction into evidence. Since Appellant was prevented from playing the tape to either Della Partin or Shirley Williams, he was never afforded the opportunity to authenticate it. And since the trial judge specifically found that the mere filing of the tape in the record sufficed to preserve the issue, there was nothing more Appellant could do except file it and appeal.

### b. Use of tape recording to refresh the recollection of Shirley Williams.

█ The "recorded recollection" exception to the hearsay rule, KRE 803(5), does not require that the recorded recollection be in the form of a written memorandum prepared by the witness. For example, a witness' recollection may be refreshed by use of a transcript of his prior testimony. *E.g., Denham v. Commonwealth,* 303 Ky. 28, 196 S.W.2d 874 (1946). *Compare Benge v. Commonwealth,* 298 Ky. 562, 183 S.W.2d 631 (1944), a prosecution for false swearing in which there was no court record of the prior inconsistent sworn statement of the defendant. It was held in *Benge* that the defendant's prior inconsistent testimony could be proven through any witness who had heard him testify at the former trial.

No Kentucky cases are found in which a tape recording of a telephone conversation was used to refresh the recollection of one of the participants. However, the issue has been addressed twice by the United States Court of Appeals for the Second Circuit. In *United States v. McKeever,* 271 F.2d 669, 675 (2nd Cir.1959), it was held that a tape recording played to a witness is analogous enough to a document shown to the witness to satisfy the requirements of the hearsay exception for recorded recollection. And in *United States v. Kusek,* 844 F.2d 942, 949 (2nd Cir. 1988), a tape recorded telephone conversation, which had been suppressed because illegally obtained, was permitted to be used to refresh the declarant's memory with regards to events which he claimed to have forgotten. KRE 803(5) refers to a "memorandum *or* record" (emphasis ours). If Williams had prepared a written memorandum of her conversation with Della Partin shortly after the conversation occurred, it would not be arguable that the memorandum could be used to refresh her recollection. Obviously, a tape recording of the conversation would be an even more accurate record of what was said. We find the federal cases persuasive on this issue and adopt their reasoning. Shirley Williams should have been permitted to hear the tape recording to see if it fully refreshed her recollection.

KRE 803(5) provides that the memorandum or record may be used to refresh the witness' recollection and, "[i]f admitted, the memorandum or record may be read into evidence but may not be received as an exhibit unless offered by an adverse party." If the memorandum or record does refresh the witness' recollection, there is no need to admit the recording into evidence, because the witness will be able to testify from his or her refreshed memory. Lawson, *supra,* § 8.85, at 500. Normally, it is only when the witness' memory is not refreshed that the admissibility provision of the rule is triggered. If authenticated by the witness, the memorandum is read to the jury in place of the testimony of the witness as if he or she had been able to testify from memory. Like the testimony of the witness, the memorandum or record does not become an exhibit to be taken to the jury room during deliberations.

But if Williams is able to properly authenticate the recording in this case, it will be

immaterial whether the recording does or does not refresh her recollection. The authenticated recording will be admitted as a prior inconsistent statement of Della Partin pursuant to KRE 801A(a)(1).

■ Note also that if the recording is admitted through the testimony of Shirley Williams, such will not implicate KRE 805 by creating multiple layers of hearsay. The statement of Della Partin is admissible as a prior inconsistent statement. As discussed *supra* in this opinion, Della Partin's relation of Bill "Doc" Partin's statements to her is not a hearsay use of those statements, but is admissible as evidence of Bill "Doc" 's state of mind immediately prior to his confrontation with Appellant. Even if that were not so, the statement would be admissible under the hearsay exception for statements against penal interest by a declarant who is unavailable. KRE 804(a)(4); KRE 804(b)(3). Bill "Doc" Partin's statements to his mother constituted the criminal offense of terroristic threatening. KRS 508.080(1)(a). As the 1974 Commentary to that statute explains, that offense can be committed even if the victim has no knowledge of the threat.

■ Finally, any attempt to impeach or refresh the recollection of a witness with a tape recorded statement must be conducted first in chambers outside the hearing of the jury so that the jury will not be prejudiced by having heard the recording in the event it is determined to be inadmissible. *See Thacker v. Commonwealth*, Ky., 401 S.W.2d 64 (1966).

■ For the reasons set forth herein, Appellant's conviction must be vacated and this case remanded, because Appellant was prevented from attempting to use the tape recorded telephone conversation either to impeach Della Partin or to refresh the recollection of Shirley Williams. We do not hold now that the tape recording must be admitted into evidence. If Appellant is unable to authenticate the recording through Della Partin, Shirley Williams, or some other witness, and if the recording does not serve to refresh the recollection of either Della Partin or Shirley Williams, then the error is harmless and the judgment of conviction should be reinstated. *Ross v. Commonwealth*, Ky. App., 577 S.W.2d 6 (1978); *Johnson v. Commonwealth*, Ky.App., 563 S.W.2d 486 (1978).

Wherefore, the judgment of the Bell Circuit Court is vacated and this case is remanded for an in limine hearing to determine whether Appellant can authenticate the tape recording of the conversation between Della Partin and Shirley Williams, and/or whether listening to the recording serves to refresh the recollection of either of those witnesses. If so, then a new trial shall be held in accordance with this opinion. If not, then the judgment of conviction shall be reinstated.

STEPHENS, C.J., and JOHNSTONE, LAMBERT and STUMBO, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion, with GRAVES, J., joining that dissent.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from that part of the majority opinion which vacates and remands this case to the circuit court to attempt to authenticate the tape recording of the telephone conversation between Della Partin and Shirley Williams. The trial judge correctly excluded the tape of the alleged telephone conversation.

There is no indication of who made the tape, how it was made or how the speakers were identified. There is no way for the trial judge, this Court or anyone else to know exactly what the tape actually is an alleged record of, or even that it is what Brock claims that it is. Clearly, Brock has failed to comply with the requirements of *Commonwealth v. Thompson*, Ky., 697 S.W.2d 143 (1985), in that he has not presented a complete record on all the issues which he wishes to be considered on appeal. *Thompson, supra,* held that when a complete record is not before the reviewing court, that court must assume that the omitted record supports the decision of the trial judge. *See also Copley v. Commonwealth*, Ky., 854 S.W.2d 748 (1993).

In addition, none of the requirements set out in *Carrier v. Commonwealth*, Ky.App., 607 S.W.2d 115 (1980), have been followed so

as to meet even a minimum foundation of trial requirements for the introduction of a recording.

In addition, the tape in question does not meet the mandates of a state-of-mind exception to hearsay rule of KRE 803(3). There is no indication of exactly when the victim made the alleged threats to Brock. According to the testimony of Della Partin at trial, she saw the victim the morning before his death which had occurred at 7 p.m. in the evening. Even if we accept that version of the facts, such evidence was too remote to be relevant. *See Matthews v. Commonwealth,* Ky., 709 S.W.2d 414 (1985). This type of evidence was cumulative because of the numerous relatives who testified repeatedly about Partin's drinking habits and his allegedly hostile mindset against Brock.

Brock called Della Partin and her testimony was not prejudicial to his theory of the case. She stated that she was rather old and had memory problems and did not remember much about the event except that she thought she saw the victim the morning before he was killed. At the most, impeachment by the tape would have entitled Brock to an instruction on self-defense which he received in any event. The trial judge correctly exercised his discretion in excluding the tape.

I would affirm the judgment of conviction in all respects.

GRAVES, J., joins this dissent.